**PUTNAM MILLS CORPORATION**
v.
**The UNITED STATES.**
No. 357–70.

United States Court of Claims,
June 20, 1973.

Martin N. Whyman, New York City, attorney of record, for plaintiff. Albert Lyons, New York City, of counsel.

Gerald L. Schrader, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before DAVIS, Acting Chief Judge, DURFEE, Senior Judge, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

The plaintiff now before the court, Putnam Mills Corporation (Putnam), seeks to recover $14,480.22 from the United States, alleging that it has either an express or an implied contract with the defendant through its agent, the Small Business Administration (SBA), as guarantor or escrow promisor of amounts due Putnam as a subcontractor-supplier of the Sorensen Manufacturing Company (Sorensen). Putnam seeks the cost of goods delivered to Sorensen for which Putnam has never received payment from either Sorensen or the United States. For reasons to be detailed, the court holds that, even if it is assumed for the purposes of this discussion that a contract of some type existed between the plaintiff and the Government, the plaintiff has failed to show that it substantially performed its obligations under the contract; therefore, it has not presented a claim redressable under 28 U.S.C. § 1491. There is no genuine issue as to any material fact. The case is before the court on motions for summary judgment.

In late 1967, the Air Force awarded the Sorensen Manufacturing Company two contracts[1] for the manufacture of

---

1. Contract Nos. F41608–68–C–6835 and F41608–68–C–6847.

parachutes at a total price of $389,321.- 69. A cash flow analysis of Sorensen's financial situation revealed that the contractor would require a maximum of $140,000 in financing. The Small Business Administration was prepared to loan the contractor $100,000 (the maximum amount the SBA had authority to loan), in order to help meet this financing requirement. The balance of the financing could be avoided as unnecessary if Sorensen's suppliers would agree to 60-day credit terms instead of the usual 30-day terms for payment on the goods received by Sorensen.

Sorensen, on December 5, 1967, entered into a subcontract with the plaintiff, Putnam, for the supply of specified quantities of four colors of nylon ripstop parachute cloth.[2] The contract called for the delivery of one-third the total quantity of each color ordered to be shipped at monthly intervals for 3 months. By shipping the order in percentage lots the contractor could apparently start production immediately, without the necessity of inventorying large quantities of cloth until a supply in the right proportions was achieved.

The proceeds of a $100,000 loan made by the SBA to Sorensen were held by the SBA in an escrow-type arrangement to be used to pay Sorensen's suppliers direct. The SBA likewise received payments from the Air Force as the contract was completed in order to assure disbursements to the suppliers as their bills became due. The plaintiff, uneasy about the requested 60-day credit terms, exchanged correspondence with SBA officials seeking to obtain a guaranty of payment for the cloth it was to supply the contractor. The precise nature of this correspondence will be detailed infra in an attempt to define the terms of the alleged express or implied agreement created by these letters. Suffice it to say at this point that the plaintiff ap-

parently agreed to go along with the 60-day credit terms and began to ship the fabric. The deliveries, however, did not arrive in the proportions specified. By March 15, 1968, the date on which the second of the three shipments was to have arrived and 66 percent of each color should have been delivered, the plaintiff had sent 100 percent of the sand colored fabric, 25 percent of the natural colored fabric, and only 0.4 percent and 1.4 percent of the international orange and olive green fabrics, respectively. As of May 1, 1968, the contractor had received the vast majority of the quantities ordered of the sand, international orange and olive cloth, but Putnam had sent only 30 percent of the natural colored fabrics. Part of the quantity of natural fabric that was sent had to be returned since it did not comply with the width specifications of the contract.

The end result of this confusion and failure to deliver the correct quantities of goods was that Sorensen's production slowed and eventually stopped since it did not have sufficient quantities of all the colors of fabric that went into each parachute. Putnam never sent the rest of the natural colored cloth since the contractor had not fully paid for the amounts shipped up to that point. Sorensen's inability to pay was a direct result of its failure to keep up the production schedule and thereby receive progress payments from the Air Force. The contractor was clearly caught in a vicious circle of nondelivery leading to nonproduction and leading to nondelivery again. The contract was eventually completed, but only when Sorensen obtained the balance of the needed natural colored fabric from another supplier at a higher price. On November 29, 1968, Sorensen finally paid Putnam $28,726.- 09, which amount represented the contract price of the fabric actually delivered by Putnam for which it had not yet been paid, less $12,628.89 as a setoff,

2. The contract called for the delivery of:
71,500 yards of natural cloth;
71,500 yards of international orange cloth;

28,700 yards of sand cloth;
28,700 yards of olive green cloth.

which included the excess reprocurement costs Sorensen had to pay for the bulk of the natural fabric, and consequential damages representing the cost to Sorensen of the plant shutdowns occasioned by Putnam's late, improper and incomplete deliveries. The amount Putnam is now seeking in its claim before this court is the amount of the setoff, plus interest, $14,480.22.

Pursuant to an arbitration clause in its contract with Sorensen, the plaintiff instituted arbitration proceedings before the American Arbitration Association in New York City in an attempt to recover the amount of the setoff. Sorensen, located in the State of Utah, did not defend its interests in the arbitration action because of lack of funds for travel and legal fees. A default judgment for Putnam resulted, based on the uncontested evidence presented by it to the arbitrators. The arbitration decision, awarding plaintiff $14,480.22, was confirmed by the Supreme Court of New York, in an action in which Sorensen likewise took no part. In neither case was the United States served with notice of the proceedings. Thereafter, the plaintiff attempted to execute its judgment against Sorensen, but was unable to collect any portion of the amount owed, since by this time Sorensen had gone out of business.

Putnam next attempted to recover the judgment in a suit against the United States brought in the United States District Court for the Southern District of New York, alleging that it had either an express or an implied contract with the United States, through its agent, the SBA, as guarantor or escrow promisor of amounts owed by Sorensen to its suppliers under the Air Force contracts. The District Court dismissed the case for lack of subject matter jurisdiction, which decision was affirmed on appeal to the United States Court of Appeals

for the Second Circuit. In a per curiam opinion, dated October 6, 1970, the Court of Appeals stated:

> \* \* \* Although plaintiff apparently has no enforceable claim on an express guaranty, he may well have an enforceable promise to hold the funds in escrow, either on a promissory estoppel theory [citations omitted], or because the plaintiff's promise to supply the fabric constituted conventional consideration. [432 F.2d 553, 554 (1970).]

The Court of Appeals went on to conclude:

> It is our view that plaintiff has pleaded a claim which may well entitle it to recovery in contract. However since the claim exceeds $10,000 it must be asserted in the Court of Claims. \* \* \*. [432 F.2d at 554.]

This dicta, taken literally by plaintiff, has provided the impetus for the present suit alleging the same cause of action plaintiff had pressed before the District and Circuit Courts.

It is clear that, unless the plaintiff can provide evidence of the existence of some type of contract between it and the United States, it cannot, as a subcontractor, recover directly from the United States for amounts owed to it by the prime. United States v. Munsey Trust Co., 332 U.S. 234, 241, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); United States Fid. & Guar. Co. v. United States, 475 F.2d 1377, 201 Ct.Cl. —— (March 1973). Both parties deal extensively with the language in the correspondence between the plaintiff and the SBA in an effort to prove or disprove the existence of a contract. The plaintiff is using the correspondence to allege that an express contract or one implied in fact, over which this court has jurisdiction,[3] existed between it and the United States. Whether or not an enforceable contract

---

3. To the extent the plaintiff's suit rests on the allegation that it had a contract implied in law (quasi-contract) with the United States, this court is without authority to hear the issue. National Bank of No. America v. United States, 456 F.2d 754, 757–758, 197 Ct.Cl. 948, 956 (1972); Algonac Mfg. Co. v. United States, 428 F.2d 1241, 1255, 192 Ct.Cl. 649, 673 (1970), and cases cited therein.

arose out of the language of the letters could be a complicated problem. Contrary to what the plaintiff has argued, representations or agreements made by an agent of the Government in his representative capacity will not necessarily bind the United States if such an agreement is beyond the agent's authority. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Housing Corp. of America v. United States, 468 F.2d 922, 199 Ct.Cl. 705 (1972). In addition, the Government is not estopped from later denying the agent's lack of authority. California-Pac. Util. Co. v. United States, 194 Ct.Cl. 703, 720 (1971). Due to the complications involved and the fact that this case presents an alternative basis for reaching a decision resolving the matter, the court refrains from dealing with these issues and will assume *arguendo* that the SBA agent had the authority to, and did, enter into a binding contract with the plaintiff.

At this point it then becomes necessary to examine the language contained in the correspondence between the parties in an effort to determine the precise nature of the alleged contract and to clarify the nature of the obligations contained therein.

The first link in the chain of letters sent between the SBA and Putnam Mills, dated January 10, 1968, was a letter written by an SBA official, recommending Sorensen for credit. It stated in pertinent part:

> * * * Loan proceeds and the proceeds from the Air Force to be assigned, will be escrowed. Disbursement on purchases and expenses will also be controlled by our Agency. This will place us in a position to guaranty [sic] payment of funds to you.

The plaintiff's president responded by letter on January 18, 1968, by saying that plaintiff would extend Sorensen the requested 60-day credit terms "provided that you [the SBA] first deliver to us the guarantee of payment" to cover amounts due for the goods to be delivered to Sorensen. The SBA then sent a second letter, dated February 2, 1968, which redescribed the nature of the escrow arrangement and concluded: "This puts us in a position to guaranty [sic] payment of all materials and costs arising out of the contract." Putnam's cautious president did not feel that this letter constituted the express guaranty of payment that he had requested in response to the first letter from the SBA, and on February 14, 1968, asked that the SBA provide an express guaranty of payment. By a letter dated February 21, 1968, the same SBA official responded saying:

> * * * We are sorry but it is impossible for this Agency to legally give you an unconditional guaranty of payment for· material supplied to the Sorensen Manufacturing Company. However, we can give you reasonable assurance that within 60 days you will receive payment * * *.

In an apparent attempt to reassure the plaintiff that its bills would be paid, the letter continued:

> The Defense Contract Administration in our area has assured us that Sorensen Manufacturing Co. will be able to perform satisfactorily on the contracts mentioned. Should this be the case, we can foresee no reason why you will not be paid *for materials shipped as agreed.* [Emphasis added.]

Based upon the language in these letters, the plaintiff contends that the defendant, by an express or an implied contract, promised to pay Putnam the full amounts due for the quantity of goods received by Sorensen. Subsequent to defendant's disclaimer on February 21, 1968, of any unconditional guaranty but of only "reasonable assurance" of payment "for materials shipped as agreed," plaintiff made deliveries to Sorensen and extended credit to Sorensen therefor.

▆ The language of the letters just described, and the nature of the arrangement as a whole, makes it clear

that if any guaranty of payment existed between the defendant and the Putnam Mills Corporation, it was subject to the condition that the defendant would only pay "for materials shipped as agreed." If the language in the letters is read to make the United States the holder in an escrow arrangement, its obligation to pay the money to the plaintiff would not have arisen until the fulfillment of a necessary condition precedent. In this case the condition was, once again, the plaintiff's shipment to the contractor of conforming goods, according to the schedule called for in the contract between the plaintiff and Sorensen. Under either the guaranty or the escrow characterization, the plaintiff does not appear to have met the prerequisite condition of proper and timely delivery. The plaintiff has not denied that it shipped the goods in the manner described by the Government in its affidavits, and summarized *supra*. Such deliveries would seem to constitute a patent noncompliance with the terms of the contract. In addition, the improper and incomplete deliveries were the root cause of Sorensen's production difficulties, which might justify the withholding of damages for the excess costs of reprocurement and the costs of the unscheduled shutdowns. From the facts unchallenged on their merits by the plaintiff, it seems clear that under either an escrow or a guaranty characterization of the pertinent facts, the defendant's alleged obligation to pay would never have matured. On the failure of the condition to occur, any money still held by the defendant would belong to Sorensen.[4] Plaintiff's remedy would be against Sorensen for any amounts it feels were wrongfully withheld. The fact that such a judgment was obtained but is uncollectible is not a concern of the Government.

All of this follows, of course, unless the plaintiff is correct when it argues that the issue of its compliance or noncompliance with the terms of the contract was an issue dealt with in the New York arbitration litigation; therefore, it would be an issue closed to reexamination by this court due to the doctrines of res judicata and collateral estoppel. Lockheed Aircraft Corp. v. United States, 426 F.2d 322, 325, 192 Ct.Cl. 36, 43 (1970); Forrest Village Apts., Inc. v. United States, 371 F.2d 500, 178 Ct.Cl. 490 (1967). The United States contends that since it was not given notice of the arbitration proceedings, was not allowed to protect its interests before the arbitrators, and the alleged guaranty contract was before neither the arbitration panel nor the New York state court, it cannot be bound by their decisions. Normally the res judicata effect of a judgment does not reach parties who were not adversaries in the initial action. Restatement of Judgments § 82 (1942). The plaintiff, however, would attempt to bind the United States by classifying it as a privy of the Sorensen Manufacturing Company and, therefore, bound by the arbitrators' and the New York Supreme Court decisions, just as Sorensen would be bound. The Restatement of Judgments § 83 (1942) states:

§ 83. Privies—General Rule.

A person who is not a party but who is in privity with the parties in an action terminating in a valid judgment is, to the extent stated in §§ 84–92, bound by and entitled to the benefits of the rules of res judicata.

The problem, therefore, reduces to the simple question—Is the defendant, on these facts, in privity with the Sorensen Manufacturing Company for the purposes of res judicata and collateral estppel?

---

4. *See* Restatement (Second) of Agency § 14 D (1958).
   "Comment:
   "*a. Nature of escrow.* An escrow is a deed, money or chattel delivered to a person, the holder, by another and which the holder contracts to retain until the happening or non-happening of an event; if the event happens, or fails to happen, before a specified time, the escrow is to be delivered to a third person; otherwise he is to return it to the depositor. * * *."

■ The defendant, through the Department of the Air Force, had a contract with Sorensen; it was therefore in privity of contract with Sorensen. The words "privity" or "privy," however, are not necessarily interchangeable between the contract and res judicata contexts. While the defendant may be in privity of contract with Sorensen, it may not be a privy of Sorensen for the purposes of res judicata. The Restatement defines various types of privies for res judicata purposes and the extent to which each might be bound by the initial judgment, but each definition turns on the nature of the over-all relationship between the parties involved.

■■ It would seem that regardless of whether the contract is termed an escrow or a guaranty agreement, the plaintiff is attempting to cast the defendant in a role like that of a surety. In effect, the obligation arose out of the subcontract between Putnam and Sorensen making Sorensen primarily liable for payment, while the defendant is alleged to be a co-obligor along with Sorensen and therefore secondarily liable. If this conclusion is accepted, then the Restatement of Judgments § 97 (1942) would define the res judicata effect to be given the New York arbitration decision under these facts. Section 97, in pertinent part, reads:

§ 97.   Successive Actions Against Co-Contractors Where Duty of Indemnity.

(1) Where two persons are under a contractual or quasi-contractual duty to the same person, but one of them, the indemnitee, if required to pay damages for the breach of duty, would be entitled to indemnity from the other, the indemnitor, and the obligee

brings an action against the indemnitor, because of such breach of duty, a valid judgment for

\*     \*     \*     \*     \*     \*

(b) the plaintiff binds him as to the amount in a subsequent action by him against the indemnitee, but does not bind the indemnitee in any respect.

Thus, in the usual situation in which two parties may be liable for the same obligation, a judgment for the creditor in an action against one of the obligors (indemnitor) has no binding effect on the indemnitee in a subsequent suit between the creditor and the indemnitee, except for the limitation on the amount. In most situations of the type described by the Restatement, the two obligors would probably be in privity of contract with each other, but it is clear that this is not even a factor the Restatement considers in assigning res judicata effect to a judgment between one of the co-obligors and the creditor. The application of this view to the facts now before the court would serve to block the plaintiff's argument and permit the defendant to raise the plaintiff's improper and incomplete performance as a defense.

There is another factor that must be considered in attempting to resolve the issue of whether the arbitrators' decision must be deemed final in this case. The judgment received by Putnam in New York against Sorensen was nothing more than a default judgment. While this might make no difference as far as Sorensen is concerned, it can make a difference if the judgment is sought to be used against other parties as Putnam is attempting to do in this case.[5] The Restatement of Security § 139 (1941), for

5. Since the court has concluded that the United States is not bound as a party or privy to the New York arbitration decision, plaintiff's attempt to use that decision against the defendant affirmatively, as a sword, would not present a basis for an exception to the doctrine of mutuality of estoppel. For a discussion of cases and situations in which exceptions to the mutuality rule have been considered, where the prior decision is used defensively as a shield by the nonparty to the prior action, see generally Technograph Printed Circuits, Ltd. v. United States, 372 F.2d 969, 178 Ct.Cl. 543 (1967) [the mutuality rule followed in a patent case], and F. James, Civil Procedure § 11.31 (1965).

example, treats the issuance of a default judgment against a debtor independently from a judgment entered after a trial on the merits:

§ 139. Judgments between Creditor and Principal: Effect as Proof of Principal's Liability in Action by Creditor against Surety.

\*　\*　\*　\*　\*　\*

(3) Where, in an action by a creditor against a principal, judgment is obtained by default or confession against the principal, and the creditor subsequently brings an action against the surety, proof of the judgment against the principal is evidence only of the fact of its rendition.

Application of this section of the Restatement once again leads to the conclusion that the plaintiff should not be permitted to interpose the New York arbitrators' decision in an attempt to prevent this court from considering the plaintiff's compliance or noncompliance with the terms of its contract with Sorensen. *See also* Motor Vehicle Acc. Indem. Corp. v. National Grange Mut. Ins. Co., 19 N.Y.2d 115, 278 N.Y.S.2d 367, 224 N.E.2d 869 (Ct.App.N.Y.1967).

There is still a final factor to consider which militates against agreement with the plaintiff's position. As pointed out by the defendant, Federal Rule of Civil Procedure 55(e) [6] limits the entrance of default judgments against the United States as party defendant. While application of the New York arbitration decision to the issue in this case would not constitute entrance of a default judgment against the United States as such, it would serve to achieve the same result. That is, the application of Putnam's New York default judgment to the case at hand would serve to foreclose the examination of the compliance issue in this case, an issue central to the Government's defense. Rule 55(e) counsels a policy of caution when a court is asked to enter a judgment against the United States in a case in which the evidence has not been adequately presented. Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962). The Court of Claims Rules do not contain a rule parallel to F.R.C.P. 55(e), but this court has in the past noted, as instructive, portions of the Federal Rules having a bearing on issues before the court. Seminole Indians v. United States, 471 F.2d 614, 615, 200 Ct.Cl. ——, —— (Jan. 1973). There seems to be no reason why the court should not likewise consider the general policy inherent in F.R.C.P. 55(e) as instructive, along with the other authority cited *supra,* in reaching the conclusion that the facts of this case do not present a situation suitable to the proper application of the doctrine of collateral estoppel.

In neither the affidavits nor the briefs accompanying its motion for summary judgment did the plaintiff contest the truth or validity of the Government's assertions that its deliveries did not comply with the terms of the contract between it and Sorensen. Plaintiff had ample opportunity to do so, but instead chose to rely only on its res judicata defense, which, for the various reasons already cited, cannot be followed in this case. As a result, there appears to be no issue of fact as to the nature of the plaintiff's deliveries to Sorensen. The court does not feel obligated to give the plaintiff another opportunity to contest this matter when the Government's position was clear from the briefs and affidavits it filed originally. Court of Claims Rule 101(f). Therefore, the court holds that on the facts shown, the plaintiff did not comply with the terms of its contract with Sorensen. This failure relieved the United States of any liability with which it might have potentially been charged under the language of the alleged contract created by the letters sent between the SBA and the plaintiff. For all of the above reasons, the defendant's cross-motion for summary judgment is granted while plaintiff's motion for summary judgment is denied. The petition is dismissed.

---

6. "(e) *Judgment Against the United States.* No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."