### GUARDSMAN ELEVATOR CO., INC., Plaintiff,

v.

### The UNITED STATES, Defendant.

### No. 00–716C.

United States Court of Federal Claims.

Oct. 22, 2001.

Joseph P. Hornyak, Washington, DC, for plaintiff. Allen G. Reiter and Jill L. Abitbol, Sonnenschein, Nath & Rosenthal, Washington, DC, of counsel.

Brent M. McBurney, Washington, DC, with whom was Attorney General Robert D. McCallum, Jr., for defendant. Iris S. Springer, United States Department of Housing and Urban Development, of counsel.

## ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. A contractor, allegedly owed compensation for services rendered to a housing project, is pursuing a claim for breach of contract against the United States. The predicate contract arose when a court-appointed receiver was directed to evaluate and pay pre-receivership accounts payable at its discretion. Subse-

quently, the United States Department of Housing and Urban Development ("HUD") assumed control of the project and appointed the receiver to manage the project, entering into a stipulation with the other parties that incorporated the receiver's preexisting responsibilities. Argument is deemed unnecessary.

### FACTS

The following facts are not disputed. Guardsman Elevator Co., Inc. ("plaintiff"), has serviced elevators at a housing project owned by the Medgar Evers Houses Associates ("Medgar Evers") located in Brooklyn, New York since 1988. The project received federal housing assistance program subsidies pursuant to both a regulatory agreement and housing assistance payments agreements to which Medgar Evers and HUD were parties. HUD also held a first mortgage on the project. Plaintiff performed these services pursuant to a contract with BPC Management Corporation, an agent for Medgar Evers.

In 1997 the project's tenants sued Medgar Evers, HUD and others associated with the project under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1994), alleging improper removal of project funds and under New York state law alleging failure to properly maintain the project. Pursuant to the parties' stipulation, the United States District Court for the Eastern District of New York placed the project under receivership on June 17, 1997, and appointed Jeffery Goldstein, President, ARCO Management Corporation ("ARCO")[1] the receiver *pendente lite* (the "Receivership Order"). The RICO case was later dismissed. *Medgar Evers Houses Tenants Ass'n v. Medgar Evers Houses Assoc., L.P.*, 25 F.Supp.2d 116, 124 (E.D.N.Y. 1998), *aff'd sub nom Abbott v. Medgar Evers Houses Assoc. L.P.*, 201 F.3d 430 (2d Cir. 1999) (unpublished table decision), *cert. de-*

nied, 529 U.S. 1130, 120 S.Ct. 2005, 146 L.Ed.2d 956 (2000).[2]

The Receivership Order authorized ARCO to order materials, labor, and services necessary to remedy the uninhabitable conditions enumerated in the complaint. It directed ARCO to give first priority for payment to remedial and maintenance work.[3]

As to existing accounts, paragraph 15 of the Receivership Order directed:

> The Receiver shall evaluate all current accounts payable, and shall determine in his discretion, and subject to the discharge of his responsibilities under this order, whether and in what order any such outstanding claims shall be paid.

Per Paragraph 4(a), ARCO was to pay these obligations from project revenues:

> The source of revenues for all expenditures authorized by this receivership shall be limited to *project revenues and the reserve for replacement fund.* Project revenues include tenant rents, the HUD Section 8 payment, and any income produced by the operations of the project. HUD's consent to the appointment of a receiver does not operate in any way as a release from the constraints placed upon the use of the general insurance fund as proscribed by Congress in 207(k) of the National Housing Act. Accordingly, the receiver shall not request from HUD the release of any moneys other than *project funds.*

(Emphasis added.)

Plaintiff subsequently forwarded to ARCO 103 unpaid invoices totaling $79,704.79. At the same time, ARCO authorized and approved plaintiff's continued rendering of services. On August 7, 1997, the court entered a Stipulation and Order (the "HUD Stipulation") dissolving the receivership and transferring possession of the project to HUD.

---

1. The receiver is referred to as ARCO in this order.

2. The parties do not explain how or why the judge for the Eastern District of New York maintained the property under receivership after he held that the court lacked ancillary jurisdiction over plaintiffs' remaining state law claim.

3. Paragraph 8 of the Receivership Order reads:

> The receiver shall disburse the monies collected and deposited with him in the following priority:
> (a) payment in full for all work described in paragraph "4" above as well as fuel costs and the costs of ordinary repairs, maintenance and operation.

ARCO remained as HUD's managing agent, and ARCO's duties and responsibilities remained unchanged from its duties as receiver, subject now to modification by HUD. The HUD Stipulation expressly incorporated the terms of the Receivership Order.[4] The court also directed ARCO to determine which accounts payable it would pay and which accounts payable it would not pay, subject to subsequent investigation and verification, and to report its findings to HUD and the property owner.

On September 8, 1997, ARCO issued a report of "Pre–Receivership Payables for Medgar Evers." It identifies plaintiff with the figure $58,362.31 and the notation "Elevator contractor—Evidence of all this work was completed." In a December 4, 1997 report, ARCO informed the court that, because project revenues were inadequate to pay invoices identified as actual during a certified financial audit, it "assume[d] the partners will have to sit down with HUD to determine how to best deal with this shortfall." Plaintiff alleges—an allegation that defendant does not challenge on this motion—that although other contractors not identified as pre-receivership payables were paid, plaintiff was not. See Compl. filed Nov. 27, 2000, ¶ 14.

Plaintiff now sues the United States for breach of contract and for recovery in *quantum meruit*, alleging that as a third-party beneficiary of the HUD Stipulation, ARCO's failure to remit payment on the invoices is attributable to HUD. Defendant moves under RCFC 12(b)(1) to dismiss the claims for lack of jurisdiction under RCFC 12(b)(4) to dismiss plaintiff's breach claim for failure to state a claim upon which relief can be granted or under RCFC 56 for a grant of summary judgment.

## DISCUSSION

### 1. *Subject matter jurisdiction*

It is well-settled doctrine that a complaint will not be dismissed for lack of subject matter jurisdiction "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Therefore, when the facts, as alleged in the complaint, reveal "any possible basis on which the non-movant might prevail, the motion must be denied." *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683).

■ The Tucker Act, 28 U.S.C. § 1491(a)(1) (1994 & Supp. V 1999), confers the Court of Federal Claims with jurisdiction over any claim against the United States founded upon an express or implied contract. The court's Tucker Act jurisdiction thus extends only to plaintiffs in privity of contract with the Government. *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed. Cir.1984); *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 8, 479 F.2d 1334, 1337 (1973). A plaintiff not in privity may assert jurisdiction based on its status as a third-party beneficiary. *Glass v. United States,* 258 F.3d 1349, 1354 (Fed.Cir.2001). For jurisdictional purposes a third party must show the intention of the contracting parties to provide a benefit to the third party. *Roedler v. DOE,* 255 F.3d 1347, 1352 (Fed.Cir.2001); *U.S. Ecology, Inc. v. United States,* 245 F.3d 1352, 1357 (Fed.Cir.2001).

■ Defendant resists jurisdiction, arguing that the Receivership Order does not provide a basis for contract with the Government and that plaintiff was not a party to the HUD Stipulation. Although defendant disclaims a contract between plaintiff and the United States, "the law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be pleaded, not ultimately proven." *Total Med. Mgmt., Inc. v. United States,* 104 F.3d 1314, 1319 (Fed.

---

4. "The duties and responsibilities of ARCO as managing agent will remain the same as set forth in the June 17, 1997 receivership Order, except that such duties and responsibilities may be modified by the Mortgagee–In–Possession Agreement to be signed between the owner and HUD, and/or by subsequent agreement between ARCO and HUD." Neither party asserts that ARCO's duties were thereafter changed.

Cir.1997); *accord Spruill v. MSPB*, 978 F.2d 679, 686–87 (Fed.Cir.1992). To establish jurisdiction over its breach of contract claim in this case, plaintiff therefore must adequately plead contractual privity with the United States or one of the exceptions to privity that affords a basis for suit. The exception proffered by plaintiff is that it was a third-party beneficiary to the HUD Stipulation, which, by incorporating the terms of the Receivership Order, obligated HUD to pay plaintiff for outstanding work.

The parties do not dispute that the HUD Stipulation is a contract to which the United States is a party. Nor do they dispute that plaintiff is a pre-receivership payable of the type addressed in that contract. Plaintiff has met its burden for jurisdictional purposes because it adequately alleges that, as an entity to which the contract confers a right to compensation, it is a third-party beneficiary.[5] Defendant's argument that the language of the HUD Stipulation nevertheless precludes the formation of enforceable rights by third-party beneficiaries is an argument on the merits more properly addressed as a failure to state a claim upon which relief can be granted or as a request for summary judgment. *Cf. Total Med. Mgmt., Inc. v. United States*, 29 Fed.Cl. 296, 298 (1993) ("[Q]uestions of law, like issues of fact, can only be 'decided after and not before the court has assumed jurisdiction'"). Accordingly, jurisdiction is present under the Tucker Act to adjudicate the merits of plaintiff's breach of contract claim.

### 2. *Standards on a motion for summary judgment*

Defendant moves to dismiss for failure to state a claim upon which relief can be granted under RCFC 12(b)(4) or, alternatively, for summary judgment under RCFC 56, submitting correspondence between ARCO and the New York judge and an internal ARCO memorandum with its motion. The court therefore addresses the motion as one for summary judgment in accordance with RCFC 12(b), which mandates that, if on a motion for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed.Cir.2000).

Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law and there are no

---

**5.** Defendant devotes a substantial portion of its motion to the argument that plaintiff cannot establish privity of contract with the United States and thus the Court of Federal Claims lacks jurisdiction over this case. The parties do not dispute that plaintiff has no contract with the United States. At best, plaintiff is a subcontractor of ARCO, and it is well-established that a subcontractor cannot recover directly from the United States for amounts owed it by a prime. *Putnam Mills*, 202 Ct.Cl. at 8, 479 F.2d at 1337. It is equally well-established that a party cannot demonstrate privity of contract with HUD merely because HUD is extensively involved in a housing project's operations by virtue of a regulatory agreement with the project owner. *Cienega Gardens v. United States*, 194 F.3d 1231, 1244–45 (Fed.Cir.1998), *cert. denied sub nom Sherman Park Apts. v. United States*, 528 U.S. 820, 120 S.Ct. 62, 145 L.Ed.2d 54 (1999); *Aetna Cas. & Sur. Co. v. United States*, 228 Ct.Cl. 146, 153–54, 655 F.2d 1047, 1052 (1981).

Plaintiff's complaint alleges merely that it is excepted from the privity requirement as a third-party beneficiary. In its brief, however, plaintiff asserts that the HUD Stipulation gives rise to an implied-in-fact contract between plaintiff and the United States that serves as an additional basis for the court's jurisdiction. By incorporating ARCO's responsibilities into the HUD Stipulation, plaintiff asserts that HUD directly assumed responsibility for the payment of pre-receivership payables, thus creating an implied-in-fact contract with plaintiff. Plaintiff does not explain how ARCO's duty became HUD's merely by the incorporation, nor how the incorporation fulfills "the legal requisites of an express contract, offer, acceptance, agreement, consideration, etc.," necessary to find an implied-in-fact contract. *Yachts Am. Inc. v. United States*, 779 F.2d 656, 661 (Fed.Cir.1985); *accord Roedler*, 255 F.3d at 1353–54. Plaintiff points to dictum in *Frank & Breslow, LLP v. United States*, 43 Fed.Cl. 65 (1999). The Court of Federal Claims did acknowledge in that case that, where a third-party beneficiary relationship binds the government to perform at obligation to the benefit of plaintiff, a claim of an implied-in-fact contract would "not necessarily be incorrect." *Id.* at 68. Of more importance to this case, the court in *Frank & Breslow* also explained that because an actual contract was present that created a third-party beneficiary, the implied-in-fact contract theory "is a conceptual framework that is not needed here." *Id.*

disputes over material facts that may significantly affect the outcome of the suit. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The moving party bears the burden of demonstrating the absence of genuine disputes over material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although summary judgment is designed "to secure the just, speedy and inexpensive determination of every action," *id.* at 327, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 1); *accord Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988), a trial court may deny summary judgment if "there is reason to believe that the better course would be to proceed to a full trial." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

### 3. *Third-party beneficiary*

■ A party is a third-party beneficiary of a contract with the Government if that contract "reflect[s] the express or implied intention of the parties to benefit the third-party." *State of Mont. v. United States,* 124 F.3d 1269, 1273 (Fed.Cir.1997) (quoting *Schuerman v. United States,* 30 Fed.Cl. 420, 433 (1994) (delimiting analysis of third-party beneficiary status when alleged contract with Government is for private rather than public benefit)). The intended beneficiary need not be specifically identified in the contract. *State of Mont.,* 124 F.3d at 1273. "The court carefully must distinguish between incidental and indirect beneficiaries and direct beneficiaries, only the latter of which qualifies for third-party beneficiary status." *Schuerman,* 30 Fed.Cl. at 433. A finding of third-party beneficiary status does not require a finding that the contract gives the third party a direct right to compensation or to enforce that right against a promisor. *State of Mont.,* 124 F.3d at 1273; *see also D & H Distrib. Co. v. United States,* 102 F.3d 542, 546–47 (Fed.Cir.1996) (explaining that contract clause directing payment to third party creates third-party beneficiary relationship by virtue of fact that parties intended payment to satisfy promisee's obligations to that third party). Whether plaintiff is a third-party beneficiary is a mixed question of law and fact. *See Glass,* 258 F.3d at 1353.

■ Defendant rejects any claim that the HUD Stipulation endowed plaintiff with enforceable rights because plaintiff is not a third-party beneficiary of the HUD Stipulation and, even if plaintiff were, the express terms of the HUD Stipulation preclude HUD from being obligated to plaintiff. Defendant does not argue seriously that, as a matter of law, plaintiff in no way can be construed as an intended beneficiary of the HUD Stipulation. The Receivership Order directed ARCO to evaluate Medgar Evers's pre-receivership payables and to pay them at its discretion, and the parties do not dispute that plaintiff qualifies as a pre-receivership payable. The HUD Stipulation specified that the "duties and responsibilities of ARCO as managing agent will remain the same as set forth in the June 17, 1997 receivership Order." Because one of those duties was to evaluate and pay pre-receivership payables, the HUD Stipulation thereby manifests an express or implied intent by the parties to benefit pre-receivership payables such as plaintiff. Rather, the crux of defendant's argument is that because payment is subject to ARCO's "discretion," neither ARCO nor HUD assumed an obligation actually to pay plaintiff and thus plaintiff cannot prevail on a claim for breach of contract as a third-party beneficiary based solely on the fact that it was not paid.

Although defendant is correct that the HUD Stipulation did not confer plaintiff with an absolute right to be paid, it does not follow that for purposes of summary judgment ARCO's discretion precludes a finding that plaintiff was a third-party beneficiary of that agreement. For example, in *Frank & Breslow,* which also involved the payment of pre-receivership payables by ARCO and HUD, the court rejected defendant's argument that ARCO's discretion as to payment precluded plaintiffs from stating a claim upon which relief could be granted:

By the defendant's reading, the language, "will be paid from project funds, as HUD and ARCO, in their discretion, deem necessary and reasonable," is empty verbiage. The contract language would more closely resemble the government's interpretation if it stated that prior expenses would be paid if ARCO and HUD chose to do so, in their unbounded discretion. This would be a classic illusory promise.

43 Fed.Cl. at 67. The court went on to hold that, because the contract language could be interpreted to place an obligation upon HUD and ARCO to determine in good faith whether an account payable was submitted for "necessary" services in "reasonable" amounts, reference to ARCO's exercise of discretion did not necessarily preclude a claim for nonpayment. *Id.*

As in *Frank & Breslow,* defendant argues, in effect, that ARCO's obligations as to pre-receivership payables is illusory: "HUD and ARCO were not bound to perform, but instead could pay services pursuant to the June order entirely at their option ...." Def.'s Br. filed July 26, 2001, at 6. While it may be true, as defendant notes, that a "reasonable person" could so interpret the discretionary language, it is equally reasonable that this interpretation would be inconsistent with ARCO's duties under paragraph 15 as a whole. That paragraph expressly subjects ARCO's exercise of discretion "to the discharge of [ARCO's] responsibilities under this order." This language can be construed as imposing an obligation on ARCO to evaluate and pay pre-receivership payables in good faith. Notably, paragraph 15 requires ARCO to affirmatively evaluate pre-receivership payables, which can also be construed as requiring that ARCO conduct such an evaluation in good faith. This interpretation is consistent with paragraph 3 of the HUD Stipulation which itself directs ARCO to "make a determination as to which accounts payable it will pay and which accounts payable it will not pay, subject to subsequent investigation and verification," and directs ARCO to submit its conclusions to HUD and to the property owners. ARCO must then "discuss the matter" of rejection of a particular payable with the owners. Plaintiff alleges that HUD breached its obligation because, although plaintiff's claim for payment was meritorious, ARCO, as HUD's managing agent, nevertheless refused to remit payment. Because the court cannot conclude, as a matter of law, that ARCO had the right to pay pre-receivership payables in its absolute and unbounded discretion, defendant has not established on this record that it is impossible that ARCO breached a duty to plaintiff when ARCO allegedly failed to evaluate and pay those pre-receivership payables in good faith.

Defendant legitimately distinguishes *Frank & Breslow* on the ground that, although HUD and ARCO were limited to payment of pre-receivership payables from project funds, ARCO in the earlier case was not limited to a particular source of funds. Defendant propels this distinction into an argument that plaintiff cannot be an intended third-party beneficiary "because the Stipulation and the June order did not obligate HUD to pay any expenses other than from the limited source of funds." Def.'s Br. filed July 26, 2001, at 8. Assuming that this is true, and putting aside plaintiff's allegation that some pre-receivership payables not enumerated on ARCO's report were paid while plaintiff was not, nothing appears in the record to explain how project funds actually were distributed. The HUD Stipulation language obligated ARCO to evaluate and pay pre-receivership payables in good faith, so ARCO breached that duty if it chose to compensate unrecognized pre-receivable payables instead of plaintiff without some independent justification.

Similarly, the undisputed fact that, by ARCO's accounting, project revenues were insufficient to pay all pre-receivership payable claims does not as a matter of law defeat plaintiff's reasonable expectation that payment decisions would be made in good faith. Defendant does not deny that payments from project revenue funds were made to pre-receivership creditors, allegedly Con Edison and Brooklyn Union Gas, creditors that do not appear on ARCO's list of "pre-receivership payables." Genuine issues of material fact exist as to how project funds actually

were distributed in general[6] and whether ARCO acted in good faith in paying creditors as compared to plaintiff in particular.[7] Another genuine issue of material fact exists as to whether ARCO found that plaintiff's invoices merited payment. The court rejects defendant's assertion that, because the list of pre-receivership payables included the notation "this invoice should be paid" for some payables, while plaintiff's payable stated only "evidence of all this work was completed," "it is clear that payment to [plaintiff] was not approved." Def.'s Br. filed July 26, 2001, at 9. By defendant's logic the fact that other payables expressly stated "prices too high for amount of work" and "no repairs done" could also prove that plaintiff should have been paid for its completed work. Finally, defendant has not shown that project funds were insufficient to pay plaintiff.

### 4. Quantum Meruit

■ The Court of Federal Claims' Tucker Act jurisdiction does not extend to claims brought solely on the theory of *quantum meruit* because the Tucker Act does not reach claims based on contracts implied in law, as opposed to those implied in fact. *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed.Cir.1998). "We may exercise equitable powers as an incident to our general jurisdiction, for example, reforming a contract and enforcing it as reformed in an action at law. But our general jurisdiction under the Tucker Act does not include an action for 'specific equitable relief' ...." *Carney v. United States*, 199 Ct.Cl. 160, 163, 462 F.2d 1142, 1145 (1972). Plaintiff does not ground its claim for *quantum meruit* incident to the court's general jurisdiction, but appears to ground it in unjust enrichment. As such, the court has no jurisdiction over the count and it must be dismissed.

### CONCLUSION

In the scheme of things, this is a small claim of under $80,000.00. Before subjecting plaintiff to another round of briefs on stupefying legal fine points, defendant should produce to plaintiff ARCO's records reflecting how the project revenues were applied. If the funds were exhausted by (1) payments to creditors with higher priorities, or (2) payments to other acknowledged pre-receiverships payables in the same class, then plaintiff should consent to dismissal of its complaint. If the facts prove otherwise,

6. The court notes that paragraph 8 of the Receivership Order, as incorporated by the HUD Stipulation, directs ARCO to give priority payment to remedial maintenance work. "[F]uel costs and the costs of ordinary repairs, maintenance and operation" are included in this level of priority. It is possible that Con Edison and Brooklyn Union Gas did not appear on ARCO's list of pre-receivership payables because they were not pre-receivership payables or because they otherwise fell within the purview of a category of payment given priority over plaintiff. Evidence of either would necessitate a grant of summary judgment in defendant's favor. Defendant, however, makes no argument to this effect and offers only the pre-receivership payables memorandum in support of its motion. This evidence alone fails to establish the absence of a genuine issue of material fact as to how pre-receivership payables were actually paid.

7. Contrary to defendant's assertion, plaintiff need not at this time "provide its own evidence" to demonstrate how project funds were distributed. Def.'s Br. filed July 26, 2001, at 13. Defendant cites *Octocom Systems, Inc. v. Houston Computer Services, Inc.*, 918 F.2d 937, 940 (Fed. Cir.1990), a patent appeal, in support of the proposition that for purposes of defendant's mo-

tion for summary judgment, it is plaintiff, not defendant, who must provide facts to demonstrate how project funds were distributed and that plaintiff should have been paid fully. It is true than in *Octocom,* the Federal Circuit stated that "[w]here a motion for summary judgment is made and supported in accordance with [Rule 56], it is incumbent on the nonmovant in a summary judgment proceeding to proffer countering evidence sufficient to create a genuine factual dispute." *Id.* That statement, however, was made in the context of a factual determination of whether information submitted by plaintiff via affidavit created a genuine issue of material fact when "voluminous precedent" otherwise supported granting the motion. *Id.* at 943. Defendant itself submitted ARCO's memorandum of pre-receivership payables that shows the absence of the two fuel companies from the list, and this evidence militates against defendant's factual showing. Plaintiff should have sought discovery to substantiate its allegation that the utilities were paid out of turn. *See* RCFC 56(f); *Dunkin' Donuts of Am. v. Metallurgical Exoproducts Corp.*, 840 F.2d 917, 919 (Fed.Cir.1988). Nonetheless, the court is inclined to avail itself of the discretion accorded to it in considering a motion for summary judgment to allow a full development of the record.

then the parties are urged to so tailor their dispute. Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss for lack of jurisdiction is denied; *its motion to dismiss plaintiff's claim for quantum meruit is granted.*

2. Defendant's motion for summary judgment is denied without prejudice to renewal.

3. The parties shall file a Joint Status Report by November 5, 2001, proposing a schedule for further proceedings.