**AIRMOTIVE ENGINEERING CORP.**

v.

**The UNITED STATES.**

Nos. 43–74, 151–74.

United States Court of Claims.

May 12, 1976.

Roger N. Boyd, Washington, D. C., atty. of record for plaintiff. Donald C. Holmes, Jr., Jones, Day, Reavis & Pogue, Washington, D. C., of counsel.

Frances L. Nunn, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant. Don W. Crockett, Washington, D. C., the Renegotiation Board, of counsel.

Before COWEN, Chief Judge, and NICHOLS and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

In these combined contract renegotiation cases of first impression, plaintiff comes before the court seeking a determination that certain value engineering (VE) incentive awards received from defendant are not subject to renegotiation within the provisions of the Renegotiation Act (the Act). Because the VE awards were received by plaintiff under a contract subject to renegotiation, we deny plaintiff's motion for summary judgment.

On January 12, 1968, plaintiff and the Department of the Air Force entered into a one-year service contract for the repair of jet engine blades. The contract contained a VE incentive clause providing for payment of a ten percent award to plaintiff based on Government savings in property, operations or logistical support costs.[1] The contract

---

1. The applicable portions of the VE clause provided:

"(f)(1) In the event that an accepted cost reduction proposal results in a projected net reduction in ascertainable costs in such areas as Government-furnished property (other than Government-furnished material under this contract), operations, or logistical support which exceeds any increase in acquisition cost, the contract price or fee, as applicable shall be increased by ten percent (10%) of the projected net reduction in ascertainable collateral

also granted plaintiff a fifty percent award for any savings related to Government-furnished material under the contract.[2]

In March of 1968, plaintiff made several recommendations to defendant calculated to reduce the high amount of jet engine blade scrappage incurred during normal repair procedures. Defendant adopted the recommendations and reaped a considerable savings. After years of disagreement and three Armed Services Board of Contract Appeals decisions, plaintiff received some $6.2 million in VE awards.

Subsequently, the Renegotiation Board (the Board) concluded that the VE awards constituted renegotiable "receipts and accruals" subject to the Act. The Board determined that plaintiff had realized $2.2 million in excessive profits for fiscal years 1969 and 1970. Plaintiff then brought the present action before the Court of Claims for *de novo* determination of excessive profits represented by the VE awards.

Plaintiff enters a motion for summary judgment contending that the VE awards are not subject to the Act. Plaintiff also requests oral argument. Defendant opposes the summary judgment motion, arguing that the VE awards are contract payments contemplated by the Renegotiation Act. The court agrees with defendant at this stage of the case and, therefore, denies plaintiff's summary judgment motion.

Plaintiff enters a multi-phased argument that the VE awards should not be held subject to renegotiation primarily on the basis that the VE awards are not "profits" subject to the Act. In support of this premise, plaintiff contends: (1) the payments were not contractually required, (2) the awards were merely a "unilateral" compensation made to plaintiff by defendant, (3) the VE incentives were merely a part of Government savings, (4) to subject the VE awards to renegotiation would destroy con-

tractor incentive and (5) any interpretation subjecting the awards to renegotiation would conflict with Armed Service Procurement Regulations (ASPRs).

Plaintiff's theory cannot prevail.

Plaintiff's main argument is that the VE awards are not "profits" subject to the Renegotiation Act. However, such a contention "glosses over" the clear terms of the Act itself. Renegotiation specifically applies to contracts with (among others) the Department of the Air Force (50 U.S.C. App. § 1213(a) (1970)) "to the extent of the amounts received or accrued by a contractor * * * on or after the first day of January 1951." 50 U.S.C. App. § 1212(a) (1970). Neither party disputes the fact that plaintiff's contract with the Air Force was subject to the provisions of the Act.

■ Under the Act, "excessive profits" are to be eliminated by including a "renegotiation clause" in each Government contract. Contractors are thereby required to agree "to the elimination of excessive profits through renegotiation." 50 U.S.C. App. § 1214(1) (1970). In the instant case, neither party claims that such an agreement was excluded from the January 12, 1968 contract. The question presented for resolution then becomes whether or not plaintiff's VE awards were "excessive profits" subject to renegotiation.

■ Congress carefully defined what it intended by use of the phrase "excessive profits." Subsection 1213(e) provides:

The term 'excessive profits' means the portion of the profits derived from contracts with the Departments and subcontracts which is determined in accordance * * * [with the Act] to be excessive * * *. [50 U.S.C. App. § 1213(e) (1970)].

Subsection 1213(f) further clarifies the meaning of profits:

costs * * *." [*Airmotive Engineering Corp.,* ASBCA No. 17139, 74–1 BCA § 10,517, 49, 829, 49, 833 (1974)].

2. "(f)(2) In the event that an accepted cost reduction proposal results in a net reduction in the amount of Government-furnished material

under this contract * * * the contract price or fee, as applicable, shall be increased by fifty percent (50%) of the net savings estimated to accrue to the Government in the acquisition of items under this contract * * *." *Id.*

The term 'profits derived from contracts with the Departments and subcontracts' means the excess of the *amount received or accrued under such contracts* and subcontracts over the costs paid or incurred with respect thereto and determined to be allocable thereto. [50 U.S.C. App. § 1213(f) (1970) (emphasis added)].

In short, the Act clearly contemplates that *all* "receipts and accruals" obtained as a result of performance of renegotiable contracts will be part of the renegotiation formula.

An early interpretation of the Renegotiation Board further buttresses the conclusion that Congress intended to subject value engineering incentive awards to renegotiation. Renegotiation Ruling No. 3, 32 CFR § 1499.1–3 (1975) (originally promulgated June 1, 1961) provides:

> when a value engineering recommendation made by a contractor is adopted, the contract price is adjusted upward to allow the contractor a greater profit than he would otherwise have realized. The amount of the award thus becomes a receipt or accrual to the contractor pursuant to the terms of the contract, and, if the contract is subject to the [A]ct, the amount of the award is a renegotiable receipt or accrual * * *. [32 CFR § 1499.1–3(b) (1975)].

Indeed, such a "long standing administrative interpretation" is entitled to a great deal of weight, *Commissioner v. Noel's Estate,* 380 U.S. 678, 682, 85 S.Ct. 1238, 1240, 14 L.Ed.2d 159 (1965); *Fox v. United States,* 145 Ct.Cl. 186 (1959), *cert. denied,* 361 U.S. 887, 80 S.Ct. 160, 4 L.Ed.2d 122 (1959), particularly, as in the instant case, where it clearly follows statutory guidelines.

In the present action, the VE award payments obviously constituted amounts received or accrued by plaintiff under the terms of a renegotiable contract for the repair of jet engine blades. Under the clear provisions of the Act, plaintiff's VE awards were subject to renegotiation and plaintiff's argument that the VE awards were not excessive profits must fail.

Plaintiff's remaining arguments represent guides to interpretation of the Renegotiation Act. As defendant properly points out, where a statute is unambiguous, such "wording * * * shall be given its plain and commonly understood meaning." *Sharples v. United States,* Ct.Cl., 533 F.2d 550 (1976). *See also Sode v. United States,* Ct.Cl., 53 F.2d 531 (1976); *Selman v. United States,* 204 Ct.Cl. 675, 680, 498 F.2d 1354, 1356 (1974); and *Prudential Ins. Co. v. United States,* 162 Ct.Cl. 55, 65, 319 F.2d 161, 166 (1963). However, even assuming arguendo that the Act is ambiguous with respect to whether or not plaintiff's VE awards are subject to its terms (which it is not), plaintiff's attempts to exclude the awards from renegotiation still fail.[3]

3. In its reply brief, plaintiff raises the argument that defendant is estopped from renegotiating the VE awards because various Department of Defense officials have taken the position that the incentive awards are not profits under the Renegotiation Act. Plaintiff contends that it relied to its detriment on such policy in developing its cost saving proposals in the instant case. Plaintiff may not use an estoppel argument.

Primarily, plaintiff fails to assert that the DOD officials had authority to bind the Government. The United States is not estopped to deny the authority of its agents, *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 479 F.2d 1334 (1973); *California-Pac. Util. Co. v. United States,* 194 Ct.Cl. 703, 720 (1971), and one who deals with the Government assumes the risk that the officials with whom he deals have no authority, *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Plainly, the authority to develop Renegotiation policy and interpret the Act, resides in the Renegotiation Board and the courts, not in the Department of Defense. Plaintiff was, therefore, not entitled to rely on the unauthorized interpretations of the Act by DOD officials.

Moreover, even if the representations by DOD officials were authorized, they constituted, if anything, a legal opinion of the ramifications of the Act in the incentive award area. One who relies upon a legal interpretation by a Government official assumes the risk that it is in error. *Cf. Mills v. United States,* 187 Ct.Cl. 696, 700, 410 F.2d 1255, 1257 (1969). Again, plaintiff cannot argue that defendant is bound by a mistaken legal interpretation of the Renegotiation Act by DOD officials.

**(1) Contractual requirements:**

█ Plaintiff first attempts to exclude the VE awards from renegotiation by suggesting that they were not contractually required. Such a contention ignores the plain fact that the awards were paid pursuant to subsection (f) of the VE clause of the January 12, 1968 contract. *See* notes 1 and 2, *supra*. In fact, plaintiff obtained the greater portions of its VE awards as a result of litigation before the Armed Services Board of Contract Appeals.[4] In short, the VE awards were contractually mandated.

**(2) Unilateral VE awards made by defendant:**

Plaintiff's second attempt to avoid renegotiation of the awards centers on its contention that the VE payments were merely unilateral awards made by defendant. Again, plaintiff passes over the crucial fact that under the clear terms of plaintiff's contract with defendant, there was no discretion left to the Government as to VE amounts due plaintiff. Defendant was contractually required to pay plaintiff ten percent of any net savings on property, operations or logistical support costs and fifty percent of any net savings on material costs. *See* notes 1 and 2, *supra*. Contrary to plaintiff's position, the VE awards were not made unilaterally by defendant, but took place pursuant to a bilateral contract.

**(3) Government savings:**

█ Plaintiff's third argument is that VE awards were never intended to be subjected to renegotiation because they represent only plaintiff's share of what constituted an unadulterated savings to the Government. It is true that plaintiff's VE awards were paid from Government savings and as such represented no added costs to the taxpayer. However, regardless of the source of the VE funds, they did represent monetary benefits received by plaintiff pursuant to a Government contract and as such, are renegotiable receipts contemplated by the Act.

The weakness of plaintiff's "Government benefit" argument is put into clearer focus if we carry it one step further. Using the same logic, plaintiff could argue that since the VE awards represented only its share of Government savings (thus costing nothing to the taxpayer), the payments should not be subject to income tax. Surely no court would so find. The VE payments clearly are subject to income tax treatment. They should equally be subject to renegotiation, regardless of their source.

**(4) Incentive:**

Plaintiff's fourth attack has some merit. Plaintiff claims that subjecting the payments to renegotiation would prove counterproductive because the VE award program's goal is to encourage contractors to save money for the Government. According to plaintiff, by putting the VE awards through renegotiation, such contractor initiative will be discouraged.

█ Absent certain provisions of the Renegotiation Act, plaintiff's contractor incentive argument would have a great deal of force. Indeed, to encourage savings, VE award clauses are to be construed liberally to spur contractors to develop Government cost reduction programs. *Cf., Dravo Corp. v. United States,* 202 Ct.Cl. 500, 480 F.2d 1331 (1973); *B. F. Goodrich Co. v. United States,* 185 Ct.Cl. 14, 398 F.2d 843 (1968). In fact, we admit to a strong sympathy for plaintiff's overall position. The Renegotiation Act itself recognizes the problem of contractor incentive. In plain language it specifically deals with the basic philosophy of cost savings.

> In determining excessive profits *favorable recognition must be given* to the efficiency of the contractor or subcontractor, with particular regard to attainment of quantity and quality production, *reduction of costs,* and economy in the use of materials, facilities, and manpow-

---

4. As stated by the BCA: "In this appeal Airmotive asks for $1,505,819.05 alleged to be *due it under the above contract* as a result of adoption by the Government of certain value engineering change proposals." *Airmotive Eng. Corp., supra* at 49,830 (emphasis supplied).

er; and in addition, there shall be taken into consideration the following factors: * * *

 * * * * * *

(4) Nature and extent of contribution to the defense effort, including *inventive and developmental contribution* * * *. [50 U.S.C. App. § 1213(e) (1970) (emphasis supplied)].

*See also* 32 CFR § 1499.1–3(b), *supra.*

It is therefore clear that Congress recognized and resolved the problem that the "all receipts and accruals" section of the Act might discourage contractor incentive. However, rather than totally exclude incentive profits from the Act as plaintiff suggests, Congress clearly instructed the Renegotiation Board and the Court of Claims to consider such incentive awards *on the merits* of any Renegotiation decision. What this portends for plaintiff in the instant case is that the VE awards cannot be excluded from the *de novo* excessive profits determination at this stage of the proceedings. *But at trial, the law requires the trial judge to take the nature of the awards into consideration in making his excessive profits evaluation.*

In short, discouragement of contractor incentive is adequately dealt with in the Act and does not provide any reason to hold that plaintiff's VE awards should be excluded *at this stage.*

(5) Conflict between the Act and ASPRs:

■ Plaintiff's final position is that an interpretation bringing VE awards within the Act will create an impermissible conflict between the Renegotiation Act and the ASPRs because the Act and the ASPRs must be read *in pari materia.*

This argument is merely a restatement of plaintiff's "incentive destruction" contentions. Plaintiff creates an apparent conflict by citing the "incentive goal" provisions of the ASPRs.[5] It is true as plaintiff notes that all "laws, rules and regulations

must be read in the context of other laws pertaining to the same subject matter and should be interpreted in the manner which is most reasonable and logical in light of the aims and the designs of the total body of law of which it is a part." *Cohen v. United States,* 181 Ct.Cl. 400, 406, 384 F.2d 1001, 1004 (1967). However, there is no conflict present in our instant decision between the incentive goal in the ASPR VE provisions and the Renegotiation Act. Plaintiff would create such a conflict by urging that to subject VE awards to renegotiation destroys incentive. However, as expressly noted in part (4) *supra,* Congress saw the potential for such conflict and resolved the problem in the Act itself. § 1213(e), *supra.* In short, subjecting plaintiff's VE awards to renegotiation creates no conflict between the Act and the ASPRs.

In conclusion, in this contracts renegotiation case plaintiff's summary judgment motion attempts to have certain value engineering incentive award payments excluded from the excessive profit determination required by the Renegotiation Act. However, since the payments represented "receipts and accruals" obtained by plaintiff pursuant to a renegotiable contract, it is clear that the Act contemplated subjecting them to renegotiation. Plaintiff's arguments that the awards were not contractually required, were unilaterally made by defendant, and were merely a part of Government savings, do not change this conclusion. Further, the instant interpretation should not destroy contractor initiative because the law requires the trial judge to take the nature of the awards into consideration in making his excessive profits evaluation. This conclusion also does not create a conflict between the Renegotiation Act and the Armed Services Procurement Regulations. At this threshold stage of the case we are merely holding that under the clear terms of the Renegotiation Act, plaintiff's VE incentive awards are subject to renegotiation.

---

5. *See, e. g.,* ASPR § 1.1703–1(b) (32 CFR § 1.1703–1(b)):

"* * * [A] strong incentive tied to definitely assured savings will induce maximum contractor efforts to realize the full savings potential of value engineering * * *."

Accordingly, for the foregoing reasons, plaintiff's summary judgment motion is denied and the case is hereby remanded to the trial judge for further proceedings consistent with this opinion.