SANDERS–MIDWEST, INC.

v.

The UNITED STATES.

No. 764–85C.

United States Claims Court.

Aug. 25, 1988.

Patrick K. McMonigle, Kansas City, Mo., Atty. of record, for plaintiff. Roger W. Penner, R. Elizabeth Bandoli and Dysart Taylor Penner Lay & Lewandowski, of counsel.

Paula J. Barton, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Karen S. Fishman, Dept. of Justice, Leslie Clark and Richard Jensen, U.S. Postal Service, of counsel.

## OPINION

MEROW, Judge:

Defendant has moved for summary judgment on two of three counts set forth in plaintiff's amended complaint and to dismiss the remaining count on jurisdictional grounds. Plaintiff opposes defendant's motions. Defendant's motions are granted for the reasons stated below.

### *Facts*

On February 12, 1983, plaintiff entered into a contract with the United States Postal Service (USPS) to perform certain mechanical work required for the construction of a general mail and vehicle maintenance facility in Phoenix, Arizona. Plaintiff's bid of $4,498,155 for the contract was the lowest of the 13 bids submitted in response to the invitation for bids. Plaintiff's bid made no provision for state and local taxes. The government had originally estimated that the work would cost $6,549,900 to perform. However, the highest bid submitted for the work was only $5,880,000.

A pre-construction conference was held on February 16, 1983, after the contract was awarded to plaintiff. The parties agree that contract paragraph 29 (Federal, State and Local Taxes) was discussed at the conference. Subparagraph 29(a) provides: "Except as may be otherwise provided in this contract, the contract price includes all applicable Federal, state and local taxes and duties." In response to a question by plaintiff, the parties both state that plaintiff was told that it was responsible for all applicable taxes.

More than a year and a half later, by letter dated October 26, 1984, plaintiff wrote the USPS that only recently had it come to plaintiff's attention that its assumption that the project was exempt from state and local taxes may have been in error. In that letter, the plaintiff requested that, pursuant to subparagraph 29(e) of the contract, the government provide it with evidence establishing that the project it was working on was exempt from state and local taxation. Subparagraph 29(e) provides: "Unless there does not exist any reasonable basis to sustain an exemption, the Postal Service upon the request of the contractor shall, without further liability, furnish evidence appropriate to establish exemption from any Federal, State or local tax * * *."

By memorandum of November 5, 1984, the government responded that the issue of state tax exemption was covered under clause 29 of the General Provisions of the contract and that each contractor "by virtue of clause 29, paragraph (a) was to include all applicable federal, state and local taxes and duties in his contract price." The memorandum also noted that, according to the "Arizona Privilege Sales Tax Bulletin—Contracting," paragraph 3, "[c]ontracts performed for the United States government are taxable in the same manner as contracts performed for individuals."[1] The USPS stated it did not have

---

1. Title 15, Revenue, of the Arizona State Code, provides:
   "Article 6. Sales Tax—Contracting Classification
   R–15–5–604. Contracts with Government agencies

   Construction projects performed for the United States Government, State, or counties, or any agencies thereof, are taxable."

any evidence the project plaintiff was working on was exempt from state and local taxes and, in addition, the USPS noted that all of plaintiff's contract modifications had included the "applicable" taxes from which plaintiff was now stating it had assumed its project was exempt.

Subsequently, by letter of December 5, 1984, plaintiff informed the USPS that the contractor had been "audited by the State of Arizona for Sales Tax" on the project. Plaintiff requested either a Tax Exempt Certificate from the government or, in the alternative, an adjustment to the contract price for the amount of the taxes since those taxes were not included in its bid.

In support of this request, plaintiff cited to ¶ 1.02 of Section 01100 of the General Requirements of the contract, which states:

### DIVISION I—GENERAL REQUIREMENTS

### SECTION 01100—MISCELLANEOUS REQUIREMENTS

1.02 STATUS OF U.S. POSTAL SERVICE: For the Contractor's information the Postal Service is "... an independent establishment of the executive branch of the Government of the United States ..." (39 U.S.C. 201) and, as such, has the same status as other federal departments and agencies insofar as the applicability of federal, state and local taxes and local requirements for building permits are concerned.

By letter dated January 9, 1985, the contracting officer furnished documentation to plaintiff stating that plaintiff was the contractor of record on the contract, that plaintiff and its subcontractors were "agents" of the USPS for purposes of the project, and that the Postal Service should be treated for federal, state and local tax purposes in the same manner as other federal government agencies.

By letter dated January 2, 1985, plaintiff submitted a certified claim to the contracting officer for $107,355.28. The claim stated that plaintiff had been assessed sales tax on the contract in that amount for the period of April 1, 1983 to January 31, 1984. Plaintiff claimed that no amount of state sales tax had been included in its bid based upon the contractor's assumption that work performed for the USPS was exempt from all state and local taxation. Plaintiff indicated it had relied on a number of contract provisions to support that assumption. The contracting officer issued his final decision denying the claim on February 22, 1985, concluding that the claim was without merit. The contracting officer relied on General Provisions 29 and 6 of the contract.[2] Based on these provisions, the contracting officer concluded that the contractor was responsible "for determining which taxes will be applicable to its performance and including an appropriate amount in its bid and resulting contract price" and "for having taken steps reasonably necessary to ascertain the nature and location of the work, and the general and local conditions which can affect the work or the cost thereof." He continued that, "[a]ny failure by the contractor to do so will not relieve him from responsibility for successfully performing the work without additional expense to the Postal Service." With regard to paragraph 1.02, relied upon by plaintiff, the contracting officer stated that section "indicates that the Postal Service is entitled to any exemptions that would be available to other federal agencies. * * * [It] does not represent that your purchases for performance on the project would be exempt."

Plaintiff submitted a second, supplemental certified claim to the contracting officer on August 21, 1985. Relying on the rea-

---

2. General Provision 6 provides as follows:
   "6. CONDITIONS AFFECTING THE WORK
   The Contractor shall be responsible for having taken steps reasonably necessary to ascertain the nature and location of the work, and the general and local conditions which can affect the work or the cost thereof. Any failure by the Contractor to do so will not relieve him from responsibility for successfully performing the work without additional expense to the Postal Service. The Postal Service assumes no responsibility for any understanding or representations concerning conditions made by any of its officers or agents prior to the execution of this contract, unless such understanding or representations by the Postal Service are expressly stated in the contract."

soning set forth in its earlier claim, plaintiff sought an additional $35,454.17, which amount included the interest assessed by the state for untimely payment of sales tax, additional sales tax payments made subsequent to the filing of its earlier claim, and projected tax payments for the duration of the contract. The contracting officer issued his final decision denying this claim on October 22, 1985, based on grounds set forth in his earlier decision.

Plaintiff then timely filed its complaint in the Claims Court, requesting a judgment of $142,809.45 plus interest. Plaintiff's complaint and amended complaint contain three counts. Count 1 alleges that the invitation to bid and the contract misstated or otherwise failed to disclose the contractor's obligation with respect to the payment of sales tax. Count 2 alleges that the government has been unjustly enriched because it has neither directly paid the sales tax to the state of Arizona nor indirectly paid the tax through the contract. Count 3 seeks reformation of the contract, claiming that the contractor made a mistake when it submitted its bid by not including an amount for state sales tax and that defendant was aware, or should have been aware, of the error. Defendant has moved for summary judgment on counts 1 and 3 and to dismiss count 2. Plaintiff opposes each motion.

### Discussion

■ Plaintiff in count 1 alleges that defendant misrepresented the liability of the contractor for state and local taxes through untrue or misleading statements made by defendant to plaintiff. In this connection, plaintiff argues defendant had a duty to disclose any and all information available to it which would clarify or explain all statements contained in the contract and bid proposal that were subject to reasonable misinterpretation. Plaintiff claims the government failed to fulfill this duty by not informing plaintiff that the contract was subject to the state sales tax. Plaintiff argues that, while the contract states the contractor must pay all applicable state and local taxes, it contains other provisions which make it unclear whether the project would be subject to state and local taxes, and thus the invitation to bid and the contract are misleading. Plaintiff relies on the provision which states that the USPS has the same status as other federal agencies in regard to the applicability of state taxes and claims this provision misled it into assuming the contract was exempt from state tax. (*See* 1.02 of Section 01100, GENERAL REQUIREMENTS, *supra*.) Plaintiff also points to subparagraph 29(b) as evidence defendant considered the contract work was free from state taxes. According to plaintiff, this clause provides for an adjustment to the contract price "should the Contract be deemed to be subject to taxation, at a later date." [3]

The other clause plaintiff relies on to establish that the contract language was not clear and that it was reasonable in not providing for state and local taxes in its bid

---

**3.** Paragraph 29(b), which is concerned with the Federal excise tax, not state taxes, provides as follows:

"(b) Nevertheless, with respect to any Federal excise tax or duty on the transactions or property covered by this contract, if a statute, court decision, written ruling, or regulation takes effect after the contract date, and—

(1) results in the Contractor being required to pay or bear the burden of any such Federal excise tax or duty or increase in the rate thereof which would not otherwise have been payable on such transactions or property, the contract price shall be increased by the amount of such tax or duty or rate increase, provided the Contractor warrants in writing that no amount for such newly imposed Federal excise tax or duty or rate increase was included in the contract price as a contingency reserve or otherwise; or

(2) results in the Contractor not being required to pay or bear the burden of, or in his obtaining a refund or drawback of, any such Federal excise tax or duty which would otherwise have been payable on such transactions or property or which was the basis of an increase in the contract price, the contract price shall be decreased by the amount of the relief, refund, or drawback, or that amount shall be paid to the Postal Service as directed by the Contracting Officer. The contract price shall be similarly decreased if the Contractor, through his fault or negligence or his failure to follow instructions of the Contracting Officer, is required to pay or bear the burden of, or does not obtain a refund or drawback of, any such Federal excise tax or duty."

is subparagraph 29(e), *supra*. This clause provides that the USPS will supply evidence, at the contractor's request, to establish exemption from federal, state or local tax. In sum, plaintiff claims defendant had a duty to determine whether a bidder would misunderstand or misinterpret any provision contained in the bid solicitation since the government encourages the contractor to rely upon the contract text it provides, and "the liability for any damage resulting from an ambiguous term contained in the contract issued by the United States Government shall be born[e] by the Government."

Defendant responds that plaintiff has failed to identify a single provision stating that plaintiff is not liable for Arizona sales tax so that plaintiff's assumption of state tax exemption would have been reasonable under the circumstances. Defendant proffers that paragraph 29 clearly and unambiguously provides information to the contrary, *i.e.*, the contract price bid includes all federal, state and local taxes.

In *Boyd International, Ltd. v. United States*, 10 Cl.Ct. 204 (1986), the court considered an identical provision to the one at issue herein and found the government need not reimburse plaintiff for taxes it should have included in its bid since clause 29 was clear and unambiguous that the bid should have covered those taxes. The court held that "[t]he burden of determining whether the exemption provided in paragraph 29(f) [29(e) herein] applies to work performed under any particular contract, however, rests with the contractor." Furthermore, the court held that, since "clause 29 is designated as a general provision for use in numerous jurisdictions * * * rather than being inconsistent with the general rule in paragraph 29(a), paragraph 29(f) merely provides an exception for use in appropriate jurisdictions." 10 Cl.Ct. at 205. Paragraph 29(f) in *Boyd International, Ltd.* provided that exemption certificates will be issued by the government "[u]nless there does not exist any reasonable basis to sustain an exemption. The Government upon the request of the Contractor shall, without further liability, furnish evidence appropriate to establish ex-

emption from any Federal, State, or local tax * * *."

Similarly, in this case, clause 29(e) is not inconsistent with clause 29(a) nor is any ambiguity created by a reading of the two clauses. Neither specifically refers to whether or not the state of Arizona imposes sales tax on the contract work. The contract provisions are general. In order to determine what "applicable" taxes the contractor must include in its bid price, the revenue laws in the particular state where the work is to be performed must be considered. In this case, plaintiff, based on its incorrect assumption that work for the USPS is exempt from Arizona sales tax, neglected to determine what the law actually provided. Now, plaintiff requests the court to find the government had a pre-contract obligation to determine whether Arizona would impose a sales tax on the contract work and then inform the bidders. That is, plaintiff states the government should have this burden because it drafted the bid documents and had a duty to explain any unclear or ambiguous provisions. However, as found in *Boyd International, Ltd.*, the contract provisions referenced by plaintiff do not create an ambiguity. They are general provisions which cover all jurisdictions. Paragraph 29(a) provides that a contractor is to pay all applicable taxes and is to include the cost thereof in its bid price. There is nothing unclear about this provision. In fact, plaintiff does not claim this provision is unclear in and of itself. Clause 29(e) is also clear. Pursuant to this clause, the USPS was to furnish an exemption certificate at the contractor's request. Plaintiff says the USPS furnished the certificate misleading the contractor even further into believing the work was exempt from tax. However, a provision directing the USPS to supply this certificate at the contractor's request is not a statement that a particular state provides an exemption from tax for the contract work. Whether a particular state has such an exemption is simply not covered by subparagraphs 29(a) and (e).

Rather, the burden of inquiry as to the tax law of the state concerned rests with

the bidder.[4]

Accordingly, this case involves plaintiff's knowledge, or lack thereof, concerning "applicable" state law. Plaintiff had an equal opportunity to ascertain whether the contract work was exempt from state or local tax. It was simply a matter of checking the Arizona state revenue code to determine what were the applicable taxes to be included in the contractor's bid price. Indeed, General Provision 6, quoted in n. 2, *supra*, required that the contractor ascertain the local conditions affecting cost of the work, and that any failure to do so "will not relieve him from responsibility for successfully performing the work without additional expense to the Postal Service." Thus, plaintiff cannot claim that it had no responsibility under the terms of the bid solicitation to ascertain that there were applicable state and local taxes which could affect the cost of the work and thus its bid price. Furthermore, the fact that it is a provision of Arizona law which is involved also weighs heavily against plaintiff's position. Persons are charged with knowledge of the law. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

▪ Moreover, even if the Postal Service had misrepresented Arizona sales tax law, plaintiff's position would still lack validity. *See Mills v. United States*, 187 Ct.Cl. 696, 410 F.2d 1255 (1969); *Airmotive Engineering Corp. v. United States*, 210 Ct.Cl. 7, 13, n. 3, 535 F.2d 8, 11 (1976).

▪ In addition, plaintiff did not bring its bidding position to the Postal Service's attention until after the contract was awarded. If an ambiguity were present, a bidder's obligation is to bring it to the government's attention in writing prior to bidding. *Space Corp. v. United States*, 200 Ct.Cl. 1, 5, 470 F.2d 536, 538 (1972); *S.O.G. of Arkansas v. United States*, 212 Ct.Cl. 125, 128, 546 F.2d 367 (1976). If plaintiff had questions regarding the issue of applicable taxes, it should have made its questions publicly known prior to bidding.

Accordingly, this is a situation where plaintiff made an assumption that there were no applicable state and local taxes, and that assumption was in error. However, the government cannot be held to have misled the plaintiff regarding the applicability of sales tax to the contract which is, in any event, a requirement of Arizona law for which plaintiff must be charged with knowledge. *See Foster Construction C.A. v. United States*, 193 Ct.Cl. 587, 602, 435 F.2d 873 (1970) (in misrepresentation, the wrong consists of misleading the contractor by a knowingly or negligently untrue representation of fact or a failure to disclose where a duty requires disclosure). Defendant's motion for summary judgment is granted as to count 1.

▪ Defendant has also moved for summary judgment as to count 3 wherein plaintiff requests that reformation of the contract be allowed because there was a mistake at the time the contract was executed regarding whether the contract work was subject to sales tax in Arizona. In support, plaintiff states that the USPS knew or should have known plaintiff had made a mistake when it did not provide for payment of sales tax in its bid. According to plaintiff, defendant should be charged with knowing it had made a mistake in its bid because of the disparity between the government's estimate of the cost of the job and the bids submitted by plaintiff and some of the other contractors. The government's estimate was $6,549,900; plaintiff's bid was $4,498,155, which was almost $2 million less than the government's estimate. However, seven of the other 12 bids received were within $500,000 of plaintiff's bid. Citing to *Chernick v. United States*, 178 Ct.Cl. 498, 372 F.2d 492 (1967), plaintiff claims the large disparity between its bid price and defendant's estimate should have led the contracting officer to request the bidders to verify their bids to insure that no mistakes had actually been made. According to plaintiff, reformation of the contract is warranted be-

---

**4.** This is not a situation where superior knowledge or actual or imputed knowledge of a mistake-in-bid is involved. *See Petrochem Services,* *Inc. v. United States,* 837 F.2d 1076 (Fed.Cir. 1988), regarding the government's duty to disclose when it has superior knowledge.

cause of the failure of the contracting officer to act to verify the bids when the government knew or should have known that plaintiff had made a mistake in bidding. In addition, plaintiff claims that since the USPS drafted the bid documents, it bears the responsibility for any misinformation contained therein. On this basis, it is asserted that, even if plaintiff was negligent in not providing for sales tax in its bid, reformation should not be barred. Finally, plaintiff submits that it had no obligation to make inquiries of the state taxing authorities as it had the right to rely on defendant's representations in the contract and invitation to bid. Thus, if this is a case involving negligence, any negligence should be imputed to defendant.

Defendant opposes plaintiff's claim that the contracting officer, based on the bids submitted, knew or should have known that plaintiff was mistaken in its bid. Defendant states that plaintiff's mistake was in business judgment and was not the type of mistake for which contract reformation is usually allowed. *United States v. Hamilton Enterprises, Inc.*, 711 F.2d 1038, 1048 (Fed.Cir.1983). Defendant also states that, if plaintiff had included in its bid the entire amount it now claims, plaintiff would not have been the low bidder for the work. Thus, defendant argues that, since plaintiff was awarded the contract because it was the low bidder, plaintiff should not be allowed to recover the contract monies which it had excluded from its bid in order to obtain the contract. Moreover, defendant claims that, even if plaintiff were to prevail on this count, its recovery, under case precedent, would be limited to $1,845, the difference between its bid and the next lowest bid.

Considering this last point first, in *United States v. Hamilton Enterprises, Inc.*, 711 F.2d 1038, 1048 (Fed.Cir.1983), the court adopted the rule established by the Court of Claims that, on reformation, because of mistake in the contractor's bid, the recovery may not exceed the difference between the contractor's mistaken bid and the next lowest bid.[5] Plaintiff does not directly respond regarding this limitation on its recovery. Rather, plaintiff appears to suggest that the next lowest bidder and the next lowest bidders after it also were mistaken and failed to account for sales tax. However, no support is offered such as would be necessary to create a triable issue as to that suggestion were it necessary to resolve the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

In *Aydin Corp. v. United States*, 229 Ct.Cl. 309, 316, 669 F.2d 681 (1982), the court, citing to *Wender Presses, Inc. v. United States*, 170 Ct.Cl. 483, 485, 343 F.2d 961 (1965), stated, at 316, that "[w]here * * * a mistake in bid is not alleged until after the contract is awarded, * * * '[i]t is plain that plaintiff may recover only if defendant's responsible officials, knew or should have known of the mistake at the time the bid was accepted.'" In this case, plaintiff does not allege the contracting officer had actual knowledge, at the time the bid was accepted, that it had made a mistake in its bid. Thus, plaintiff's claim is that the contracting officer should have known of the mistake. The court, in *Chernick v. United States*, 178 Ct.Cl. 498, 372 F.2d 492 (1967), stated the test for constructive notice in cases dealing with mistake in bids. In considering all facts and circumstances of the case, a court is to determine whether "there were any factors which reasonably should have raised a presumption of error in the mind of the contracting officer * * *." 178 Ct.Cl. at 504.

\* \* \* \* \* \*

(2) To reform a contract * * *
(ii) to increase the price if the contract price, as corrected, does not exceed that of the next lowest acceptable bid under the original invitation for bids; * * *."

5. *See also* 48 C.F.R. § 14.406–4 (1987) *Mistakes After Award,* which provides:
"If a contractor's discovery and request for correction of a mistake in bid is not made until after the award, it should be processed under * * * the following:
\* \* \* \* \* \*
(b) * * * agencies are authorized to make a determination—

Plaintiff claims that defendant should have known it had made a mistake due to the $2 million difference between its bid and the government's estimate. However, based on the record, the next lowest bid was only $1,845 more than plaintiff's and seven of the other 12 bids were within $500,000 of plaintiff's bid. According to defendant, although the government's estimate was appreciably higher than plaintiff's bid, the estimate was also much higher than the other bids received. In that connection, the government's estimate exceeded the highest bid submitted by more than $640,000. Thus, the defendant claims, based on these facts, the government's estimate would more likely be perceived by the contracting officer as erroneous rather than the seven closely spaced bids. In *United States v. Hamilton Enterprises, Inc.*, 711 F.2d 1038 (Fed.Cir.1983), the court reviewed a board decision that the Navy had to request contractor verification because the vast disparity between the government's estimate and Hamilton's bid should have raised the suspicion that a mistake had been made. The court affirmed the board's finding that the government's request for verification of the bid was inadequate. However, since contract reformation had been requested, the court continued, stating at 1046, "[a] contract will not be reformed because of a unilateral mistake in bid unless the contractor establishes that the error resulted from a 'clear-cut clerical or arithmetical error, or a misreading of the specifications.' *Aydin Corp. v. United States*, [229 Ct.Cl. 309] 669 F.2d 681 (Ct.Cl.1982); *Ruggiero v. United States*, [190 Ct.Cl. 327] 420 F.2d 709 (Ct.Cl. 1970)." The court reversed the board's holding that Hamilton made the kind of mistake entitling the contractor to reformation. Instead, the court agreed with the government's argument that Hamilton bid the price it intended to bid. The court concluded that the error in Hamilton's bid resulted from an error in judgment on the part of its president,[6] which did not entitle

the contractor to reformation of its contract.

In this case, the defendant claims that plaintiff's error was an error in judgment and thus plaintiff is not entitled to reformation. Plaintiff, of course, disputes that its error was one of judgment because it claims it was misled by language in the contract and the invitation to bid, which were provided by the government. However, as mentioned with respect to count 1, the language cited by plaintiff, although general, was not unclear or ambiguous. There was no actual representation that Arizona either had or did not have an applicable sales tax. This was clearly something that needed to be determined by reference to the Arizona state code. Also, plaintiff was on notice that it had to ascertain local conditions before submitting its bid. Plaintiff erroneously assumed that the contract work was not subject to the sales tax in Arizona. Thus, the mistake herein was a mistake in judgment. Plaintiff, although charged with knowledge of the law, did not determine whether there was an applicable sales tax either by obtaining legal advice and/or advice from state taxing authorities. Therefore, it is determined that this is not the kind of mistake for which reformation may be granted.

Furthermore, there are factors why the contracting officer reasonably would not have had a suspicion that plaintiff was mistaken in its bid and thus did not request bid verification. In this regard, as already noted, plaintiff is claiming about $143,000 based on this mistake while the disparity between its bid and the government's estimate was about $2 million; there were seven other bids within $500,000 of plaintiff's bid; and, the government's estimate substantially exceeded the highest bid submitted so that the estimate would have been viewed with askance by the contracting officer. Based on those undisputed facts and circumstances, no valid basis has been shown to charge the contracting offi-

---

**6.** In *Hamilton*, the company's president was aware that the number of meals to be served under the contract in issue would be greater than the number served during the contractor's previously performed contract but erroneously assumed the services required could be provided with the same number of manhours of labor.

cer with constructive knowledge that the plaintiff had made a mistake in its bid.

Thus, defendant's motion for summary judgment is granted as to count 3.

■ Defendant has moved to dismiss count 2 of plaintiff's amended complaint on jurisdictional grounds. In count 2, plaintiff claims the government will be unjustly enriched if plaintiff does not recover the $142,809.45, as the government neither had to pay the sales tax directly to the state of Arizona nor indirectly in the contract price, although the government received the benefit of the contract work. Defendant argues that claims of unjust enrichment are premised upon the existence of contracts implied-in-law and the court has no jurisdiction over a claim founded on a contract implied-in-law. Plaintiff's response does not address the point at issue, but argues that this claim is based on an implied-in-fact contract, which would be within the court's jurisdiction.

As has been held numerous times, the claim of unjust enrichment is based on "the theory that the defendant ought to be bound to repay plaintiff, not that it validly agreed to do so, and is therefore based upon a contract implied in law, over which this court has not been given jurisdiction." *Southern States Henry Co-operative, Inc. v. United States*, 4 Cl.Ct. 370, 372–73 (1984); *see also, e.g., Aetna Casualty and Surety Co. v. United States*, 228 Ct.Cl. 146, 164, 655 F.2d 1047 (1981). There is no real dispute that there was an express agreement between the parties which encompasses the matter at issue. Plaintiff cannot recover on an implied-in-law contract theory. *See Algonac Manufacturing Co. v. United States*, 192 Ct.Cl. 649, 673–74, 428 F.2d 1241 (1970). Thus, count 2 of plaintiff's amended complaint is dismissed.

### Conclusion

It is concluded that defendant's motion for summary judgment as to counts 1 and 3 of plaintiff's amended complaint and motion to dismiss count 2 are granted. Accordingly, it is ORDERED that final judg-

ment shall be entered dismissing the complaint with no costs to be assessed.