**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 9 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.                                                  No. 98-2047

MANUEL GUTIERREZ-GONZALEZ,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-96-658-LH)

Sasha Siemel, Assistant U.S. Attorney (John J. Kelly, U.S. Attorney, Charles L. Barth, Assistant U.S. Attorney, on the brief), Office of the United States Attorney, Albuquerque, New Mexico for Plaintiff-Appellee.

Robert E. Kinney, Assistant Federal Public Defender (Ann Steinmetz, Federal Public Defender, with him on the briefs), Albuquerque, New Mexico for Defendant-Appellant.

Before **BALDOCK** , **HENRY** , and **LUCERO** , Circuit Judges.

**HENRY** , Circuit Judge.

The Defendant, Mr. Gutierrez-Gonzalez, was convicted of reentry

subsequent to deportation following an aggravated felony (second degree murder),

in violation of 8 U.S.C. § 1326(a)(1)&(2) and 8 U.S.C. §1326(b)(2). On appeal, Mr. Gutierrez-Gonzalez alleges that the district court erred in not considering his defense of entrapment by estoppel. We exercise jurisdiction pursuant to 28 U.S.C § 1291 and, for the reasons explained below, affirm Mr. Gutierrez-Gonzalez's conviction.

## I. BACKGROUND

### A. Facts

Mr. Gutierrez-Gonzalez, a citizen of the Republic of Mexico, has twice been deported from the United States, most recently in September of 1994 after he was convicted of second degree murder. His native language is Spanish, and he has only a minimal understanding of English. He is married to Dalia Aida Delgado, a United States citizen, and prior to his deportation, Mr. Gutierrez-Gonzalez resided in New Mexico with his wife and two children, both of whom are United States citizens. After his most recent deportation, Mr. Gutierrez-Gonzalez resided in Ciudad Juarez, Mexico. Ms. Delgado and his two children, however, continued to live in New Mexico and occasionally visited him in Ciudad Juarez.

At the time of his deportation, Mr. Gutierrez-Gonzalez received two forms that are relevant to this appeal. First, he was served with a deportation warrant from the INS "commanding" officers of the United States to take Mr. Gutierrez-

2

Gonzalez into custody and deport him. See Rec. vol. I, doc 56, Exh. B. Attached to the warrant was a "Notice to Persons Under Deportation or Exclusion Proceedings in the El Paso District" (the "notice"). The notice, written in both English and Spanish, gives general information regarding legal assistance for deported aliens. The notice states: "If you desire legal assistance but are without funds, one of the following organizations may be able to assist you without charge or for a nominal fee." The notice then lists the addresses and phone numbers of three private organizations in El Paso, Texas, and three private organizations located in the state of New Mexico that provide legal assistance. After listing these private organizations, the form provides the telephone number of the El Paso Bar Association and states: "The El Paso Bar Association maintains a lawyers referral service. If you can afford to hire a lawyer but have not contacted one, and you desire legal assistance, it is suggested that you contact this office."

In addition to the warrant and notice, according to the government's uncontested written proffer, Mr. Gutierrez-Gonzalez received and signed an Advisal of Penalty for Reentry: INS Form I-294. See Rec. vol. I, doc. 50, at 3. Deportation procedure requires that the alien be "served either personally or by certified mail with Form I-294 informing him in his native tongue of the penalties which can be imposed should he return to this country after deportation without

3

obtaining permission from the Attorney General." United States v. Wong Kim Bo, 466 F.2d 1298, 1303-04 (5th Cir. 1972) (giving an example of the form). In addition, the form states that "[s]hould you wish to return to the United States you must write this office or the American Consular Office nearest your residence abroad as to how to obtain permission to return after deportation." Id. See also United States v. Agubata, 60 F.3d 1081, 1082-83 (4th Cir. 1995) (discussing the contents of Form I-294).

Mr. Gutierrez-Gonzalez alleged the following facts in a written proffer (with supporting affidavits) to support his defense of entrapment by estoppel. See Rec. vol. I, doc. 56 & 57. The government does not dispute the proffered facts; rather, the government argues that, even if Mr. Gutierrez-Gonzalez's facts are true as alleged, they do not support the defense of entrapment by estoppel.

In May 1996, Ms. Delgado contacted Diocesan Migrant and Refugee Services ("Diocesan Services"), one of the private agencies listed on the deportation notice received by Mr. Gutierrez-Gonzalez, to determine if Mr. Gonzalez could obtain permission to live in the United States again. Ms. Delagdo spoke with Gloria Castro, an employee of Diocesan Services. Ms. Castro interviewed Ms. Delgado and asked her to have Mr. Gutierrez-Gonzalez come to her office the following week to complete the required paperwork for Mr. Gutierrez-Gonzalez to return to the United States. At the meeting (which took

4

place in El Paso, with Mr. Gutierrez-Gonzalez apparently in the United States illegally), the circumstances of Mr. Gutierrez-Gonzalez's deportation and his prior felony record were discussed. Ms. Castro consulted with another employee and informed Ms. Delgado and Mr. Gutierrez-Gonzalez that nothing could be done because of Mr. Gutierrez-Gonzalez's prior felony conviction. However, Ms. Castro asked Ms. Delgado to leave her home and work telephone numbers in case any assistance could be provided in the future.

Several days later, Ms. Castro called Ms. Delgado and informed her that Mr. Gutierrez-Gonzalez could apply for and receive a work permit. Ms. Castro took the necessary forms to Ms. Delgado, which included an application for adjustment of status, an application for work authorization, and an "Affidavit of Support" for Ms. Delgado to complete. Ms. Castro informed Ms. Delgado that Mr. Gutierrez-Gonzalez needed to have a medical examination to receive the work permit.

On May 28, 1996, Mr. Gutierrez-Gonzalez (again in the United States illegally) received a physical examination and proceeded to Diocesan Services for another meeting with Ms. Castro. At the meeting, Ms. Castro completed Mr. Gutierrez-Gonzalez's application for change of status. Though she was aware that Mr. Gutierrez-Gonzalez had been deported from the United States, Ms. Castro responded in the negative to a question that asked if the applicant had ever

5

been deported. She did so at the direction of her supervisor, Ms. Maria de Carbon Guerrero, who told her to proceed with the application and argue the deportation issue at a later time. After completing the application, Ms. Castro signed the document as the person who completed the form. Mr. Gutierrez-Gonzalez also signed the form, certifying "under penalty of perjury . . . that this application, and the evidence submitted with it, is all true and correct."

On June 19, 1996, Mr. Gutierrez-Gonzalez (still in the United States illegally) took his application for adjustment of status to the INS office in El Paso, Texas, for processing. When submitting the application (which stated that he had not previously been deported), he told the INS clerk, Patricia Arrambide, that he was in the United States illegally. Regardless, the INS clerk issued him a work authorization permit (Form I-688B). However, at that time, the clerk specifically informed Mr. Gutierrez-Gonzalez that the work permit was not an entry document. He responded that was not a problem because he did not plan to leave the United States. At the INS office, Mr. Gutierrez-Gonzalez was fingerprinted and an FBI records check was requested. In total, Mr. Gutierrez-Gonzalez paid $930.00 to the INS for the Form I-699B employment authorization permit.

On October 7, 1996, United States border patrol agents encountered Mr. Gutierrez-Gonzalez in the Dona Ana County Detention Center, where he was being held for failure

to pay traffic fines. The agents ran a background check on Mr. Gutierrez-Gonzalez and found that he was in the country illegally. Mr. Gutierrez-Gonzalez was subsequently indicted, charged, and convicted of reentry subsequent to deportation following an aggravated felony.

**B. Procedural History**

At his arraignment on November 14, 1996, Mr. Gutierrez-Gonzalez pled not guilty and a jury trial was scheduled to begin March 10, 1997. On March 7, 1997, the government filed a "Motion in Limine" seeking to exclude all evidence of Mr. Gutierrez-Gonzalez's contact with Diocesan Services and the INS regarding his acquisition of the I-688B work authorization permit. The trial court granted the motion and excluded the evidence. On March 10, 1997, the trial date was vacated by agreement of the parties. The parties thereafter agreed to a waiver of Mr. Gutierrez-Gonzalez's right to a jury and agreed to submit testimony and evidence by written proffer. The district court, after considering the parties' written proffers, entered its Memorandum Opinion and Order finding Mr. Gutierrez-Gonzalez guilty.

**C. Standard of Review**

Generally, a district court's grant of a motion in limine is reviewed for abuse of discretion. See Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1092 (10th Cir. 1997).

7

However, in granting the government's motion in limine, the district court reached the legal conclusion that, even taking Mr. Gutierrez-Gonzalez's evidence as true, entrapment by estoppel was not a permissible defense as a matter of law. Whether there is sufficient evidence to constitute a triable issue of entrapment by estoppel is a question of law. See United States v. Thompson, 25 F.3d 1558, 1563 (11th Cir. 1994) (specifically holding that district court's decision that entrapment by estoppel is not a permissible defense is a question of law). We therefore review de novo the district court's decision that Mr. Gutierrez-Gonzalez could not present the defense of entrapment by estoppel.[1]

## II. DISCUSSION

The statute under which Mr. Gutierrez-Gonzalez was convicted states in relevant part:

> [a]ny alien who--
>   (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

---

[1] In many entrapment by estoppel cases, the district court's conclusion that the defense is not available will rest on findings of fact. Any findings of fact made by the district court would be reviewed under the deferential "clearly erroneous" standard as set forth in Fed.R.Civ.P. 52(a). See United States v. Ortiz, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986). See also United States v. Thompson, 25 F.3d 1558, 1563 (11th Cir. 1994) ("[c]onclusions of law are reviewed de novo . . . [f]indings of fact made by the district court, however, shall not be set aside unless clearly erroneous.") In the present case, however, the district court did not make any factual findings. Rather, the court found that, accepting Mr. Gutierrez-Gonzalez's allegations as true, the facts did not establish the defense of entrapment of estoppel as a matter of law.

(2) enters, attempts to enter, or is <u>at any time</u> found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission;  or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

 (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--
 . . . .
 (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both . . . .

8 U.S.C. § 1326 (emphasis added).  The statute expressly excludes any specific intent regarding entry into the United States and makes it a crime for a deported alien to be found "at any time" in this country "unless" he has the "express" consent of the Attorney General.  As we have previously held, "nothing more than a showing of general intent is required" and "the government need not show that defendant willfully and knowingly engaged in criminal behavior, but only that the defendant's acts were willful and knowing – that the defendant willfully and knowingly reentered the United States and that he did so without the Attorney General's permission."  <u>United States v. Miranda-Enriquez</u>, 842 F.2d 1211, 1212 (10th Cir. 1988).

As Judge Posner has noted, Congress has been faced with the increasingly difficult task of stemming the flood of illegal immigration to this country.  <u>See</u> <u>United States v. Anton</u>, 683 F.2d 1011, 1020 (7th Cir. 1982) (Posner, J. dissenting).

9

> It frequently happens that aliens of the criminal and other classes who are deported under the general immigration law reenter the country unlawfully. As a matter of fact, in some instances such aliens have been deported four or five times, only to return as soon as possible to the United States in an unlawful manner.
>
> . . . .
>
> It is true . . . that if criminal prosecution fails, the previously deported alien can be deported again; but having to deport the same illegal alien again and again is just the tedious cycle that Congress was trying in section 1326 to break . . . . The fact that possible deportation is not a sufficient deterrent to discourage those who seek to gain entry through other than regular channels is demonstrated by the frequency with which (the Department of Labor) is compelled to resort to deportation proceedings for the same alien on several succeeding occasions.

Id. at 1020 (quotations omitted) (further explaining how the legislative history of section 1326 reveals Congress's intent to place the burden of a mistake as to legal status in the United States on the deported alien and quoting S.Rep.No.1456, 70th Cong., 2d Sess. 1 (1929)). In response to these problems and in the hope of deterring illegal reentry, Congress, in the plain language of the statute, has imposed a severe penalty if a previously deported felon is found "at any time" in the United States. Further, by excluding a specific intent requirement, Congress placed the burden of correctly obtaining permission from the Attorney General and reentering the United States legally on the alien.

Mr. Gutierrez-Gonzalez does not challenge the fact that the government proved every element of the crime required by the statute: that Mr. Gutierrez-Gonzalez was (1) knowingly in the United States, (2) without the permission of the Attorney General, (3) after prior deportation for an aggravated felony. Rather, Mr. Gutierrez-Gonzalez argues

10

that the government should be estopped from prosecuting him because an "agent of the government" led Mr. Gutierrez-Gonzalez to believe that he was in the country legally. Mr. Gutierrez-Gonzalez contends that he reasonably believed he was in the United States legally as a result of his interaction with Diocesan Services and the issuing of a work permit by the INS. Based on this contention, Mr. Gutierrez-Gonzalez argues that the district court erred in denying his defense of entrapment by estoppel.

## A. Entrapment by Estoppel

In <u>United States v. Nichols</u>, 21 F.3d 1016, 1018 (10th Cir. 1994), we set forth the elements of entrapment by estoppel.

> The defense of entrapment by estoppel is implicated where <u>an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation</u> so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments. There must be an "active misleading" by the government agent, and actual reliance by the defendant. <u>Further, the defendant's reliance must be reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.</u>

<u>Nichols</u>, 21 F.3d at 1018 (citations omitted) (emphasis added). Applying this test, the district court properly concluded that Mr. Gutierrez-Gonzalez was not entitled to present the defense of entrapment by estoppel.

We have not specifically addressed the type of authority – actual, apparent, or otherwise – necessary for a government agent to estop the enforcement of federal criminal laws. However, we have held that "[t]he courts invoke the doctrine of estoppel

11

against the government with great reluctance." United States v. Browning, 630 F.2d 694 (10th Cir. 1980).

> It is fundamental that the United States is not estopped by representations made by an agent without authority to bind the government in a transaction. Jackson v. United States, 573 F.2d 1189 (Ct. Cl. 1978); Albrechsten v. Andrus, 570 F.2d 906 (10th Cir.), cert. denied, 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 109 (1978); Enfield v. Kleppe, 566 F.2d 1139 (10th Cir. 1977); Atlantic Richfield Co. v. Hickel, 432 F.2d 587, 591-592 (10th Cir. 1970); Massaglia v. Commissioner of Internal Revenue, 286 F.2d 258, 262 (10th Cir. 1961). It has been held that one who relies on a legal interpretation by a governmental official assumes the risk that it is in error. Airmotive Engineering Corp. v. United States, 535 F.2d 8, 11 n.3, 210 Ct.Cl. 7 (1976). It has also been held or said that "the government could scarcely function if it were bound by its employees' unauthorized representations." Goldberg v. Weinberger, 546 F.2d 477, 480 (2nd Cir. 1976), cert. denied, 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977).

Browning, 630 F.2d at 702. Whether viewed in terms of the requirement that the reliance itself be "reasonable" or in terms of the "authority" necessary for a government official to estop prosecution, an individual is not justified in seeking out *any* public official for advice and then proceeding in reliance upon the opinion received.

The Supreme Court first addressed the defense of entrapment by estoppel, though it has never used that terminology, in Raley v. Ohio, 360 U.S. 423 (1959). In Raley, three people were called before the Ohio Un-American Activities Commission and questioned about their activities and involvement with the Communist party. The commission chairman informed the witnesses that they could decline to answer the commission's questions by invoking their Fifth Amendment right against self-incrimination, which they did. However, after their appearance before the commission, the witnesses were

12

successfully prosecuted for contempt under a state immunity statute that compelled the witnesses to answer the commission's questions. The Supreme Court held that the convictions violated due process and that the advice given by the commission was a defense to the contempt charge. In allowing the defense, the Court emphasized that the advising official "clearly appeared to be the agent of the State <u>in a position to give such assurances</u> . . . ." <u>Id</u>. at 437 (emphasis added).

In <u>Cox v. Louisiana</u>, 379 U.S. 559 (1965), the Court again applied criminal estoppel to overturn a conviction under a state statute that prohibited demonstrating "near" a courthouse. In <u>Cox</u>, the appellants were protesting the arrest of several students who had been picketing segregated lunch counters. The defendant, a leader of the demonstration, was advised by police that the group must keep to the west side of the street away from the courthouse. The defendant was subsequently arrested and convicted for demonstrating in that area. The Supreme Court reversed the conviction and, quoting <u>Riley</u>, stated that the conviction was "'an indefensible sort of entrapment by the State." <u>Id</u>. at 571. The Court found that the lack of specificity in stating what was "near" the courthouse, while not rendering the statute void for vagueness, "foresees a degree of on-the-spot administrative interpretation by <u>officials charged with responsibility for administering and enforcing it</u>." <u>Id</u>. at 568 (emphasis added) (further emphasizing that the defendant was misled by "the highest police officials in the city").

13

More recently, in <u>United States v. Pennsylvania Indus. Chem. Corp.</u>, 411 U.S. 655 (1973) ("PICCO"), the Supreme Court applied criminal estoppel to overturn a corporation's conviction for discharging industrial refuse into the Monongahela River, in violation of 33 U.S.C. § 407.  In <u>PICCO</u>, the appellant, a manufacturing corporation, was convicted under a statute that prohibited the discharging of "refuse matter of any kind . . . other than that flowing from streets and sewers" into navigable waters.  <u>Id</u>. at 672. However, a regulation of the Army Corps of Engineers construed the statute to prevent only the discharging of refuse that might affect navigation.  The district court refused to consider appellant's argument that it acted in reliance on the administrative construction of the statute because the evidence was irrelevant.  The Supreme Court, however, reversed the decision of the trial court and held that the evidence should have been admitted:  "The Corps is the <u>responsible administrative agency under the [statute]</u>, and the rulings, interpretations and opinions of the [the Corps] . . . , while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which . . . litigants may properly resort for guidance."  <u>Id</u>. at 674 (emphasis added).

Influenced by these cases, we hold that the defense of entrapment by estoppel requires that the "government agent" be a government official or agency responsible for interpreting, administering, or enforcing the law defining the offense.  This view is consistent with the Supreme Court's application of the defense discussed above, and is

14

the view taken by the Model Penal Code and several other circuits. See United States v. Spires, 79 F.3d 464, 466 (5th Cir. 1996) (holding that a defendant must show "reliance either on a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government who has been granted the authority from the federal government to render such advice"); United States v. Austin, 915 F.2d 363, 366-67 (8th Cir. 1990) (holding that a license to sell firearms does not "transform [pawn shop owners] into government officials, at least for purposes of the entrapment by estoppel defense"); United States v. Ethridge, 932 F.2d 318, 321 (4th Cir. 1991) (holding that advice from a state court judge to a felon, that he could hunt with a gun, was not a defense to felony possession charges because "the government that advises and the government that prosecutes is not the same"); Model Penal Code § 3(b)(iv) (requiring an "official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration, or enforcement of the law defining the defense"); Lafave & Scott, Substantive Criminal Law §5.1(3) (1984) (same).

One case, United States v. Talmadge, 829 F.2d 767 (9th Cir. 1987), has broadly construed the defense and held that a federal licensee (a private pawn-shop owner with a federal license to sell firearms) was an "agent of the government" whose representations could estop the prosecution of a felon whom the owner *erroneously* told could purchase a gun. But we need not decide if it is possible for the government, by issuing a license,

15

to grant an individual or group the authority to interpret, administer, or enforce the law defining the offense as that is not the situation presented in this case. Diocesan Services is clearly not licensed by the government.

### B. Diocesan Services

In the present case, the district court was correct to deny Mr. Gutierrez-Gonzalez the defense of entrapment by estoppel based on Diocesan Services' alleged misrepresentations. Diocesan Services is not a government agency. Rather, it is a private entity that provides assistance to indigent aliens who have been deported. Even if the acts of this private company could somehow be considered "state action" because it is listed on a form provided by the government, Diocesan Services and its employees are not government officials charged with interpreting, administering, or enforcing the immigration laws of the United States. Thus, the district court properly denied Mr. Gutierrez-Gonzalez's entrapment by estoppel defense based on Diocesan Services' alleged misrepresentations.

Further, Mr. Gutierrez-Gonzalez's alleged reliance on Diocesan Services is unreasonable "in light of . . . the point of law misrepresented, and the substance of the misrepresentation." Nichols, 21 F.3d at 1018. Had Mr. Gutierrez-Gonzalez wanted to legally enter the United States, he should have written the INS office or the American Consular Office nearest his residence abroad as to how to obtain permission to return

16

after deportation, as he was specifically instructed on the INS Form I-294 he received when he was deported. Instead, Mr. Gutierrez-Gonzalez twice chose to enter the country, without the permission of the Attorney General and without any misconception as to his illegal status in the United States, to meet with Diocesan Services. Moreover, Mr. Gutierrez-Gonzalez, after his last meeting with Diocesan Services, admitted he was "in the country illegally" to the INS clerk in El Paso, Texas, when he presented his application for a temporary work permit. Under these circumstances, Mr. Gutierrez-Gonzalez's alleged reliance on Diocesan Services was unreasonable.

### C. The INS Clerk

Finally, Mr. Gutierrez-Gonzalez argues that the INS "affirmatively misled him as to the state of the law" and that he "relied on that misrepresentation," when the INS clerk issued him a temporary work permit. While it would seem that Mr. Gutierrez-Gonzalez should have immediately been taken into custody when he admitted to the INS clerk that he was "in the country illegally," the INS's failure to arrest Mr. Gutierrez-Gonzalez "on the spot" and the erroneous issuance of a work permit does not estop the federal government from later arresting and prosecuting Mr. Gutierrez-Gonzalez for illegally reentering the country. Mr. Gutierrez-Gonzalez did not inform the INS clerk that he had previously been deported from the United States. Rather, Mr. Gutierrez-Gonzalez submitted a fraudulent application that affirmatively stated that <u>he had never been deported</u>. The INS clerk specifically informed Mr. Gutierrez-Gonzalez that the work

17

permit "was not an entry document." Under these facts, even if an INS clerk could be considered an "agent of the government" charged with interpreting, administering or enforcing immigration law and the actions in this case considered "active misleading" as to the state of the law, Mr. Gutierrez-Gonzalez's alleged "belief" that he was in the United States legally was not reasonable.

### III. CONCLUSION

The district court properly concluded that, as a matter of law, entrapment by estoppel is not a permissible defense in this case. Consequently, we AFFIRM Mr. Gutierrez-Gonzalez's conviction for reentry subsequent to deportation following an aggravated felony.